[Cite as *State v. Howard*, 2013-Ohio-3120.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

GERALD HOWARD

    Appellant

C.A. No.    26569

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 10 11 3277 (B)

DECISION AND JOURNAL ENTRY

Dated: July 17, 2013

BELFANCE, Judge.

{¶1}    Defendant-Appellant Gerald Howard appeals from his conviction in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2}    In November 2010, police were conducting a narcotics investigation into suspected drug trafficking between Cleveland and Akron using a confidential informant. Police listened to phone calls between two individuals, one of whom was determined to be Mr. Howard, during which Mr. Howard offered to sell 200 grams of heroin. Mr. Howard told the other individual to go to a T.G.I. Friday's. Based upon this information and prior investigation, police arrived at the T.G.I. Friday's and began surveillance, looking for a Volkswagen van registered to Mr. Howard that police believed would be used in the transaction. The van arrived; however, the sole occupant in the vehicle was a woman, Harriet Caynon. Ms. Caynon parked the van but did not exit the vehicle. She made a call, and immediately after she hung up, Mr. Howard placed a

call stating, "[W]here are you at? * * * [Y]ou're inside and she's outside waiting for you." At that point, police approached the van and ultimately arrested Ms. Caynon with approximately 200 grams of heroin. A gun was found on Ms. Caynon's person. Mr. Howard was not present at the scene where Ms. Caynon was arrested.

{¶3} As a result, Mr. Howard was indicted in October 2011 for one count of trafficking in heroin in an amount equaling or exceeding 50 grams but less than 250 grams, in violation of R.C. 2925.03(A)(C)(6), a felony of the first degree. The matter proceeded to a jury trial at which the jury found Mr. Howard guilty of trafficking in heroin as specified in the indictment. Mr. Howard was sentenced to eight years in prison. Mr. Howard has appealed, raising a single assignment of error for review.

## II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN ADMITTING A FIREARM INTO EVIDENCE THAT WAS IRRELEVANT, UNFAIRLY PREJUDICIAL, AND CONFUSED OR MISLED THE JURY IN VIOLATION OF EVID.R. 401, EVID.R. 402, AND EVID.R. 403.

{¶4} In his sole assignment of error, Mr. Howard asserts the trial court abused its discretion in admitting a firearm into evidence over Mr. Howard's objection. Notably, Mr. Howard did not object to testimony related to the firearm, nor does he challenge the admission of that testimony on appeal.

{¶5} Generally, "we review a trial court's admission of evidence for abuse of discretion." *State v. Truitt*, 9th Dist. Summit No. 25527, 2011-Ohio-6599, ¶ 30. Nonetheless, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

{¶6}    Mr. Howard asserts that the trial court abused its discretion in admitting the gun into evidence because it was irrelevant to the charge against Mr. Howard and, even assuming it was relevant, its probative value was outweighed by the danger of unfair prejudice. Specifically, Mr. Howard argues that admission of the firearm allowed to the jury to "unfairly insinuate[] that Mr. Howard provided the weapon along with the heroin[]" since the jury was provided with both the weapon and the heroin to review. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 provides that

> [a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible.

However, even relevant evidence is not admissible if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶7}    In the instant matter, when Ms. Caynon was arrested with the heroin Mr. Howard was convicted of trafficking in, a gun was found on her person. That gun is the weapon that was admitted into evidence over objection of Mr. Howard. The State, at trial, took the position that

the gun was per se relevant and admissible because "drug dealers carry firearms."[1] However, given the circumstances of this particular case, the outcome is the same irrespective of whether the gun was relevant or lacked relevancy.

{¶8} Nonetheless, we caution the State to closely consider whether admission of a firearm is actually relevant to the drug prosecution at issue before it seeks admission of the firearm. We decline to adopt any rule that would imply that firearms are per se relevant and admissible in all cases involving drug charges.

{¶9} Assuming the gun was relevant, we do not discern that its probative value was substantially outweighed by the danger of unfair prejudice in this case. *See* Evid.R. 403(A). While Mr. Howard objected to the admission of the actual gun, Mr. Howard did not object to testimony about the gun, or when he did object, there is nothing that suggests Mr. Howard was objecting on the basis of Evid.R. 401, 402, or 403. Without objection, the prosecutor stated

---

[1] We note that there is some support in the case law that evidence of a firearm could be relevant in a drug-related crime; however, we view the case law as factually and, often, procedurally distinguishable. *See State v. Bundy,* 5th Dist. Richland No. 05 CA 50, 2006-Ohio-4062, ¶ 24-25 (involving consideration of Evid.R. 404(B) testimony and stating that, "we have recognized that when the crime charged is drug related, evidence of firearms is both relevant and probative."); *State v. Thorpe,* 10th Dist. Franklin No. 87AP-1210, 1988 WL 104364, *3 (Oct. 4, 1988) (noting in dicta that, "if the sale of drugs were in issue, evidence that weapons had been located on the premises might also be relevant circumstantial evidence tending to make more likely the purchase and sale of narcotic substances[;]" however, such evidence is not relevant when the defendant is indicted under the possession part of the statute); *State v. Anderson,* 8th Dist. Cuyahoga No. 61471, 1992 WL 357303, *3 (Nov. 25, 1992) (concluding that evidence of guns being found in the appellant's apartment was admissible and relevant "to show appellant's knowledge or intent to engage in drug trafficking."); *State v. Smith*, 5th Dist. Stark No. CA-8715, 1992 WL 61363, *2-*3 (Mar. 16, 1992) ("The U.S. Court of Appeals for the Second Circuit has held that guns are relevant and probative evidence of drug conspiracies: Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.") (Internal quotations and citations omitted.).

during opening statement that police found a firearm in Ms. Caynon's sweatshirt pocket. Next, Detective Ted Male testified without objection that police "recovered a loaded firearm [from Ms. Caynon's] front * * * sweatshirt pocket." He furthered testified without objection that, when he patted her down, he recovered the gun immediately as it was in the "big pocket on the front of the sweatshirt * * *." Detective Male was shown the firearm and indicated that it was the firearm that was recovered from Ms. Caynon and that it was loaded when he recovered it, all without objection. On cross-examination, Mr. Howard's counsel asked Detective Male about the weapon and whether he knew if Mr. Howard's prints were on the gun. In addition, Mr. Howard's counsel elicited testimony indicating that Mr. Howard was not charged with having a weapon. Detective Shawn Brown also briefly testified without objection about the discovery of the gun. On cross-examination of Detective Brown, Mr. Howard's counsel asked Detective Brown if it was correct that the gun was found on a woman. Finally, on cross-examination of Detective Michael Gilbride, Mr. Howard's counsel again had the Detective reiterate that the gun was found on a woman. The gun is again briefly mentioned in the State's closing argument without objection.

{¶10} In light of the foregoing, it is difficult for this Court to imagine how, assuming the gun was relevant, that its probative value was substantially outweighed by the danger of unfair prejudice in light of the unchallenged testimony about, and in-court identification of, the gun. *See* Evid.R. 403(A). Nor can we imagine that the jury would be misled by introduction of the weapon in light of Mr. Howard's counsel's questioning which ensured the jury was aware that the weapon was found on Ms. Caynon and not Mr. Howard.

{¶11} Further, even assuming that the gun was irrelevant, and thus inadmissible, we can only conclude that its admission was harmless error. *See* Crim.R. 52(A). It seems impossible to

say that admission of the gun affected Mr. Howard's substantial rights. In particular, we note that substantial evidence was presented concerning his involvement in trafficking the heroin, the same gun was repeatedly referenced (even by his own counsel) and was identified at trial without objection, and the testimony about, and identification of, the gun was not challenged on appeal. *See id.*

{¶12} Detective Gilbride testified that the police investigation he was a part of discovered that a tan Volkswagen sedan registered to Mr. Howard was suspected of being utilized to transport large quantities of heroin from the Cleveland area to the Akron area. On November 18, 2010, Detective Gilbride monitored several phone calls between two individuals, one of whom was determined to be Mr. Howard. Detective Gilbride took notes about the content of those calls and testified to a summary of those calls at trial. In the first call, Mr. Howard asked if the other person was "looking for a pair of twins[,]" which Detective Gilbride indicated meant 200 grams of heroin. Mr. Howard also stated that he had to go downtown to pay some delinquent taxes, that the "twins" should not be a problem, and that he would call the other person back shortly. The other individual called Mr. Howard back, and Mr. Howard indicated that the individual should wait until lunch time when the businesses open up. In addition, Mr. Howard made reference to "Friday's." Mr. Howard reiterated, in code, that the individual was looking to purchase 200 grams of heroin. Mr. Howard next phoned the individual at approximately 11:20 a.m. and asked if the person was ready and told the person to wait 20 minutes and then leave. At 12:25 p.m., a tan Volkswagen van arrived at T.G.I. Friday's where police were waiting and conducting surveillance. Ms. Caynon was the sole occupant of the vehicle. She parked near where Detective Brown was parked in an unmarked vehicle but remained in the vehicle and made a phone call. As soon as she hung up, at approximately 12:29

p.m., Mr. Howard made a call to the person he had been in contact with inquiring about the person's whereabouts and stating "you're inside and she's outside waiting for you."

{¶13} At this point, police approached the van and ultimately arrested Ms. Caynon. Approximately 200 grams of heroin was found in her purse. A cell phone was discovered in the van and a gun was found on Ms. Caynon's person. Detective Gilbride testified that the heroin appeared to be pure heroin that was not yet ready for individual use; it had to be ground down to a powder and then would typically be mixed with sleeping pills. He further indicated that he had never found that much heroin on someone who was not a dealer. Detective Gilbride testified that the street value of the heroin found on Ms. Caynon was $130,000 to $200,000. Examination of Ms. Caynon's cell phone revealed that there had been calls between her phone and the phone associated with Mr. Howard on the day of Ms. Caynon's arrest. One of those calls was placed at 12:27 p.m., minutes before Mr. Howard called the person he arranged the buy with stating "you're inside and she's outside waiting for you."

{¶14} On November 19, 2010, the phone associated with Mr. Howard was called, and Mr. Howard answered and indicated that the person on the other end of the line cost Mr. Howard $70,000. Mr. Howard also asked who arrested "her." On November 22, 2010, Detective Gilbride called the number associated with Mr. Howard and did not get an answer. However, Detective Gilbride was called back and, upon answering, heard the same distinctive voice that he had heard when monitoring the prior phone calls. Detective Gilbride asked if he was speaking to Mr. Gerald Howard, and the person answered in the affirmative. Detective Gilbride told Mr. Howard that Detective Gilbride "was investigating the case involving [Mr. Howard's] fiancée, Ms. Caynon, and her arrest [for] 204 grams of heroin * * *." After hearing that, Mr. Howard hung up on Detective Gilbride.

**{¶15}** At the time Mr. Howard committed the offense, R.C. 2925.03(A) stated that

No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

**{¶16}** In light of the evidence discussed above, police were able to tie Mr. Howard to the phone calls planning the sale and attempting to consummate the sale. Moreover, the monitored call subsequent to Ms. Caynon's arrest provides further circumstantial evidence of Mr. Howard's connection to the drug deal as he told the individual that he had cost Mr. Howard $70,000, and Mr. Howard additionally asked who arrested "her," which reasonably could be inferred to be Ms. Caynon. Additionally, Mr. Howard's van was used by Ms. Caynon to transport the approximately 200 grams of heroin at issue to T.G.I. Friday's. Finally, there was evidence that Mr. Howard had called Ms. Caynon during the time period that she was in the parking lot at T.G.I. Friday's, only minutes before Mr. Howard called the individual waiting inside the restaurant to purchase the heroin and told that person "she" was waiting outside. Accordingly, we cannot say that admission of the gun affected Mr. Howard's substantial rights. *See* Crim.R. 52(A). Mr. Howard's sole assignment of error is overruled.

III.

**{¶17}** In light of the foregoing, we overrule Mr. Howard's assignment of error and affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT


MOORE, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

J. DEAN CARRO, Appellate Review Office, School of Law, The University of Akron, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.