[Cite as *State v. Steward*, 2020-Ohio-4553.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-28 |
| | | (C.P.C. No. 17CR-4210) |
| v. | : | |
| Sommer S. Steward, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 22, 2020

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief**: *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Sommer S. Steward, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following a jury trial finding her guilty of felonious assault and improperly discharging a firearm.

{¶ 2} On August 1, 2017, appellant was indicted on two counts of felonious assault, in violation of R.C. 2903.11, and one count of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161. Each of the counts also carried a firearm specification. A co-defendant, Mi Angel Steward (hereafter "co-defendant" or "Mi A. Steward"), was also charged with two counts of felonious assault and one count of

improperly discharging a firearm and additionally charged with one count of having weapons while under disability, in violation of R.C. 2923.13.

{¶ 3}  Appellant and her co-defendant were tried jointly before a jury beginning October 16, 2018.  The first witness for plaintiff-appellee, State of Ohio, was Andrea Mann, age 33.  Mann and Darla Irvin are childhood friends.  Mann is also a childhood acquaintance of appellant, and Mann has known the co-defendant since the co-defendant was nine years of age.  Mann testified that her relationship with appellant has "been rocky for the last year" due to an "altercation" in which appellant "and Irvin got into a fight and just took it too far."  (Tr. Vol. II at 34.)  At trial, Mann stated she was "not here to testify against [appellant] at all.  I'm not here to testify against Mi Angel."  (Tr. Vol. II at 35.)  With respect to appellant, Mann further stated: "I'm not against her.  We really are childhood friends, and it just went too far and really just got out of control."  (Tr. Vol. II at 36.)  Mann stated that she and Irvin are "best friends."  (Tr. Vol. II at 37.)

{¶ 4}  On July 22, 2017, Mann was at Irvin's residence when Irvin placed a 911 call.  At trial, the state played a recording of the 911 call.  On the recording, Irvin stated to the dispatcher: "Oh, my God.  This girl -- me and my friend just pulled up to my house, and we noticed there was a car already sitting outside.  And a girl -- we know the girl.  She got out and shot at my house.  Like shot at me and my house.  There's bullet holes in my house.  And drove off in a truck."  (Tr. Vol. II at 47.)

{¶ 5}  Irvin reported that the incident happened "like 5 minutes ago.  Not even 5 minutes.  Probably 2 minutes ago."  (Tr. Vol. II at 47.)  Irvin told the dispatcher: "Her name is Sommer Steward.  It was two of them. * * * Her niece's name is Mi Angel Steward.  Her niece was driving, and she's already wanted for felonious assault."  (Tr. Vol. II at 48.)  Irvin described the suspect vehicle as a blue truck and provided the dispatcher with the license plate number stating that "[t]he tag was in the window."  (Tr. Vol. II at 51.)  Irvin told the dispatcher that Mi A. Steward "never got out of the car.  She was driving.  Only one person got out of the car and started shooting, and that was Sommer."  (Tr. Vol. II at 52.)

{¶ 6}  During the 911 call, Mann also spoke to the dispatcher, stating: "They threatened to do this.  They threatened to come over to my house.  They threatened to do all of that."  (Tr. Vol. II at 53.)  Mann told the dispatcher "we were childhood friends, and

we grew up with them."  (Tr. Vol. II at 54.)  Mann further related "the girl Sommer is mad at my best friend because we've been hanging out with our friend that we grew up with all of them, and she started -- basically, they were arguing."  (Tr. Vol. II at 54.)

{¶ 7}   On the date of the incident, Mann signed a photograph identifying Mi A. Steward to the police as the individual driving the vehicle that evening.  Mann also signed a photograph identifying appellant to the police as the individual who fired shots into the house.  Mann acknowledged she "did talk to the police.  I did write a statement.  I did sign the statement.  I did all of that."  Mann testified that she "[w]ent and got high" after the 911 call.  (Tr. Vol. II at 56.)

{¶ 8}   On cross-examination, Mann testified she did not know who the shooter or driver was that evening, stating: "I just remember [Irvin] saying that it was them.  I mean, you know, like it was them."  (Tr. Vol. II at 65.)  Mann stated: "I can't say that I saw Sommer's face fire a firearm."  According to Mann: "I know that they were beefing and they had just got into a fight.  And, yes, there was a firearm fired at the house and all of that.  But I cannot sit here and say that I saw Sommer Steward's face at all or Mi Angel Steward's face at all."  (Tr. Vol. II at 67.)  Mann stated she did not observe either appellant or Mi A. Steward participate in the shooting.

{¶ 9}   Following cross-examination, and outside the presence of the jury, the state requested the trial court play a recording of a police interview conducted with Mann shortly after the incident to refresh her recollection.  The trial court granted the request.

{¶ 10} When the proceedings resumed, Mann stated on redirect examination that she recalled telling the police that "Sommer Steward" was running toward her and the house that evening.  Mann testified: "I said she was running with a gun. * * * I said she was shooting it.  I just heard it and it refreshed my memory, the recording that you just played."  (Tr. Vol. II at 92.)  When asked if she recalled telling police who was sitting in the car, Mann responded: "I said Mi Angel was driving the car, in which I know Mi Angel, what she looks like, because I've been knowing her since she was nine. * * * But I just said that on the thing.  I did give a description of Sommer, I gave a description of Mi Angel, and of the car."  Mann acknowledged she "told those police those things."  (Tr. Vol. II at 94.)  Mann further testified: "When the shots went off, I don't remember who did them.  I

don't remember seeing who. I can't say that I seen Sommer, because I didn't. I was scared and I went that way." (Tr. Vol. II at 94.)

{¶ 11} Columbus Police Officer Gary Cooper assisted police detectives in the investigation of the case. At trial, Officer Cooper identified a photo log, including photographs of a Honda CRV; the detectives performed a search of the vehicle pursuant to a search warrant. The vehicle was "bluish-green" in color. (Tr. Vol. II at 102.)

{¶ 12} On July 22, 2017, Officer Cooper assisted in the search of appellant's residence located on East Whittier Avenue. At trial, he identified photographs taken of the residence. During the search, officers discovered a revolver on a shelf in a bedroom closet; the weapon was wrapped inside a blue t-shirt.

{¶ 13} Brian Johnson, a firearm examiner for the Columbus Police Crime Laboratory, identified state's exhibit No. 11 as a "Rossi brand model M971 .357 magnum revolver." (Tr. Vol. II at 127.) According to Johnson, after the weapon is fired "[t]he shell casings will remain in the cylinder until the shooter swings the cylinder out of the frame of the weapon and manually ejects and extracts the casings." (Tr. Vol. II at 128.) He identified state's exhibit Nos. 12-1 and 12-2 as spent projectiles. Johnson "determined that both of these projectiles were fired from the same weapon." (Tr. Vol. II at 135.) He further "determined that these items could neither be identified nor eliminated as having been fired from this particular firearm." (Tr. Vol. II at 136.)

{¶ 14} On July 22, 2017, Columbus Police Detective Anthony Richardson and another detective responded to a report of a shooting incident at on Alcoy Drive based on a 911 call received at 12:03 a.m. Before leaving police headquarters, Detective Richardson was informed by police officers "it was a known suspect * * * that shot at these two victims." Detective Richardson "pulled up single photos of the two people that they had described." (Tr. Vol. II at 150.)

{¶ 15} Arriving at the scene, Detective Richardson interviewed two individuals who "stated they had been shot at." (Tr. Vol. II at 149.) The detective interviewed Mann and showed her the photographs. Detective Richardson "asked her if she recognized who it was" and Mann "said yes, she did." The detective then "had her write the person's name of who was in the photograph and had her sign it and date it and put the time on the pictures, identifying them as the two people that were involved in this incident." (Tr. Vol.

II at 151.) Mann signed the photographs at 1:09 a.m. and 1:10 a.m. on the date of the incident.

{¶ 16} Detective Richardson testified Mann wanted "to get her story out about what happened. She obviously had been riled up a little bit, because someone she knew she stated had just fired some shots at her and her friend." (Tr. Vol. II at 152-53.) Detective Richardson testified that Mann displayed no indication of being intoxicated or under the influence at the time.

{¶ 17} Irvin, age 31, testified she has known appellant and Mi A. Steward for approximately 20 years; Irvin stated they have been friends for that time and continue to be friends, and she did not want to testify. On July 22, 2017, Irvin resided on Alcoy Drive; the house is located on a cul-de-sac. At trial, Irvin identified photographs depicting bullet holes in the residence, including a bullet hole in the kitchen stove.

{¶ 18} On the night of the incident, Irvin was with her best friend, Mann. They arrived at Mann's residence at approximately 10:00 p.m. Irvin noticed "a car that was parked on my street." (Tr. Vol. II at 183.) Irvin heard gunshots. When the shots began, Irvin was "walking up to the front door, opening it." The shots "were coming from like the middle of the street." Irvin heard "two to three" shots. (Tr. Vol. II at 190.)

{¶ 19} Irvin testified: "I was startled. As I turned around, you know, they drove away. I actually didn't see Sommer physically shooting at me. I never physically seen Mi Angel. Like I said, it was dark outside. I really can't see. My friend was the one who described -- pretty much was telling me who they was. So at the end of the day, I didn't physically see her shooting." (Tr. Vol. II at 184.) Irvin further testified: "I can't see at all. And like I said, I was under the influence of drugs." (Tr. Vol. II at 191.)

{¶ 20} Irvin stated she and appellant had been in a fistfight a week earlier. According to Irvin, "[w]e had just got into an altercation, so * * * we was texting back and forth. They were saying they were going to come out and do something to me." Irvin stated: "I actually didn't know the license plate number. My friend is the one that had the license plate number. I never knew it." (Tr. Vol. II at 192.)

{¶ 21} Following the shooting, Irvin made a 911 call. Irvin told the dispatcher "I was walking to my door and I heard gunshots." (Tr. Vol. II at 185.) On the date of the incident, law enforcement personnel showed Irvin some photographs, and she indicated

the individuals in the photographs were involved in the shooting.  She acknowledged signing photographs, dated July 22, 2017, identifying appellant and Mi A. Steward.  Irvin provided the officers with an address for appellant on Whittier Avenue.  When asked who she identified as the shooter to the police, Irvin testified: "I said it was Sommer Steward." (Tr. Vol. II at 193.)

{¶ 22}  On cross-examination, when asked if she actually saw appellant and the co-defendant, Irvin stated: "I mean, it looked like it could have been them, but no, I didn't actually see them.  It was dark outside." (Tr. Vol. II at 194.)  When asked whether anyone else might have had a beef with her, Irvin stated: "I mean, I just got a lot of people that just kind of dislike me.  I don't know.  That's pretty much it." (Tr. Vol. II at 196.)

{¶ 23}  On redirect examination, Irvin acknowledged reading texts sent by appellant to Mann's phone stating: "I hope you all bitches know I'm coming for you all." Irvin testified "that's pretty much what she texted." (Tr. Vol. II at 203.)  Irvin identified another text from appellant stating: "I'm going to show you bitches how savage * * * Stewards is." (Tr. Vol. II at 204.)  Irvin further testified: "I assumed that she did it.  Like I said, we had just gotten into a fight.  My friend said it was her, so I just assumed it was her." (Tr. Vol. II at 204-05.)

{¶ 24}  Hope Olson, a DNA analyst, conducted DNA testing on the t-shirt, obtained from appellant's residence, in which the weapon was found wrapped.  Olson determined there were three contributors of DNA to the t-shirt; the major contributor was a male, and Olson's report indicated that Mi A. Steward and appellant could be excluded as the major contributor.

{¶ 25}  Columbus Police Detective Ronald A. Lemon assisted Detective Richardson in the investigation of the shooting incident. At trial, Detective Lemon identified photographs taken at Alcoy Drive depicting bullet strikes to the residence.  One of the bullet holes went through a wall and hit a kitchen stove.  He identified photographs of two projectiles found inside the residence; one of the projectiles was in a stove drawer, while the other was found on the hardwood floor.

{¶ 26}  The investigation resulted in the names of two suspects, "Mi Angel Sky Blue Steward" and "Sommer Steward."  Detective Lemon stated that no other suspects were developed and that "the victims actually knew them personally."  (Tr. Vol. II at 238.)

Warrants were obtained for the two suspects, and police officers found the suspect vehicle in front of appellant's residence located on East Whittier Street on the morning of the incident (at 4:18 a.m.). A search warrant was obtained for the residence. During the search, Detective Lemon recovered a revolver from a bedroom closet; the weapon had been wrapped in a t-shirt.

{¶ 27} At the close of the state's case, counsel for both appellant and co-defendant each made a Crim.R. 29 motion for judgment of acquittal. The trial court denied both motions. Following deliberations, the jury returned verdicts finding appellant guilty of all three counts. By judgment entry filed December 14, 2018, the trial court sentenced appellant to a concurrent term of two years of incarceration as to each count, consecutive to the three-year firearm specifications on Counts one and two, for a total aggregate sentence of eight years.

{¶ 28} On appeal, appellant sets forth the following five assignments of error for this court's review:

> [I.] Appellant's convictions were not supported by sufficient evidence.
>
> [II.] The trial court plainly erred when it failed to instruct the jury that the State's impeachment could not be considered substantive evidence. This violated Appellant's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, as well as Crim.R. 52(B), Evid.R. 103(D), and Evid.R. 105.
>
> [III.] Appellant's attorney rendered ineffective assistance of counsel which violated her right to counsel and right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.
>
> [IV.] The lower court erred when it denied Appellant's motion to exclude evidence of the firearm recovered during the execution of the search warrant [on] East Whittier Street, Columbus, OH. This violated Appellant's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, as well as Evid.R. 103(A)(2), Evid.R. 401, Evid.R. 402, Evid.R. 403(A), Evid.R. 404(A), and Evid.R. 404(B).

[V.] Appellant's convictions were against the manifest weight
of the evidence.

{¶ 29} Under the first assignment of error, appellant challenges the trial court's denial of her motion for judgment of acquittal, pursuant to Crim.R. 29, asserting there was insufficient evidence to establish her identity as the shooter. Appellant's central argument is that out-of-court identifications of the state's primary witnesses (Mann and Irvin), admitted into evidence through the 911 recording and statements made to law enforcement officers at the scene, could be considered only for impeachment purposes and not as substantive evidence.

{¶ 30} Crim.R. 29(A) states in part: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Under Ohio law, "[a] motion for acquittal under Crim.R. 29 'challenges the legal sufficiency of the evidence,' " and "such motion 'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.' " *State v. Martin*, 10th Dist. No. 14AP-189, 2014-Ohio-4447, ¶ 19, quoting *State v. Carter*, 2d Dist. No. 21145, 2006-Ohio-2823, ¶ 40; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. Under this standard "[i]n reviewing the 'record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *Martin* at ¶ 19, quoting *Tenace* at ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 31} In arguing that the out-of-court statements of Mann and Irvin could not be considered as substantive evidence, appellant relies on the "general rule," as recognized by Ohio law, that " 'prior inconsistent statements constitute hearsay evidence and thus are admissible only for the purpose of impeachment.' " *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 128, quoting 1 Gianelli, *Evidence*, Section 607.4 at 482-83 (3d Ed.2010). Related to appellant's argument is the distinction drawn by courts "between

using a prior inconsistent statement to impeach its maker under Evid.R. 613(B),[1] and using it as substantive evidence, i.e., to prove the truth of the matter asserted." *State v. Laboy*, 8th Dist. No. 87616, 2006-Ohio-5927, ¶ 19.

{¶ 32} In this respect, in instances where a prior inconsistent statement "is offered for the purpose of impeachment, the jury may only consider the prior statement as substantive evidence where the prior statement is admissible hearsay." *State v. Colvin*, 12th Dist. No. CA94-04-092 (Mar. 13, 1995), citing Weissenberger's *Ohio Evidence Manual* (1995), 227, Chapter 613. Thus, "unless another hearsay exception applies, a party may not interrogate his own witness about a prior inconsistent statement ' "for the purpose of offering substantive evidence against the accused." ' " *McKelton* at ¶ 128, quoting *State v. Dick*, 27 Ohio St.2d 162, 165 (1971), quoting *State v. Duffy*, 134 Ohio St. 16 (1938), paragraph two of the syllabus.

{¶ 33} The "[s]ubstantive use of a prior inconsistent statement is covered by Evid.R. 801(D)(1)." *State v. Hall*, 4th Dist. No. 13CA3391, 2014-Ohio-2959, ¶ 42. Pursuant to that rule, "there are limited circumstances in which a prior inconsistent statement is not hearsay and may be used as substantive evidence, i.e. to prove the truth of the matter asserted in the statement." *Id.*, citing *State v Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 183. *See also State v. Huff*, 1st Dist. No. C-930861 (Jan. 31, 1995) (prior inconsistent hearsay statement cannot be considered for substantive value "unless it either meets the requirements of Evid.R. 801(D)(1) * * * or satisfies some other exception to the rule against hearsay").

{¶ 34} Anticipating the state's argument on appeal (i.e., that the evidence at issue was either not hearsay or fell under exceptions to the hearsay rule), appellant asserts the out-of-court statements of Mann and Irvin, identifying appellant as the shooter, did not qualify as non-hearsay under Evid.R. 801(D)(1)(c). Appellant further maintains the statements did not qualify as hearsay exceptions under either Evid.R. 803(2) (excited utterances) or Evid.R. 803(5) (recorded recollections).

---

[1] Under Ohio law, "Evid.R. 613 specifically contemplates the admission of extrinsic evidence of a prior statement under the circumstances outlined in Evid.R. 613(B)," and "Ohio courts have regularly applied the rule to admit a witness's prior inconsistent statement for impeachment purposes." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 125.

{¶ 35} We first address appellant's contention that the out-of-court statements of Mann and Irvin did not qualify as non-hearsay under Evid.R. 801(D)(1)(c). At the outset, we note the 911 recording was admitted at trial as state's exhibit No. 1 without objection. Similarly, the photographs signed by the victims identifying appellant and Mi A. Steward were admitted, without objection, as state's exhibit Nos. 14, 15, 16, and 17. Further, as observed by the state, appellant does not raise an assignment of error separately challenging the trial court's evidentiary rulings as to the admissibility of the subject evidence, including the admission of the 911 recording or the victims' identifications made to police officers at the scene.

{¶ 36} Evid.R. 801(D)(1) states in part: "A statement is not hearsay if * * * [t]he declarant testifies at trial * * * and is subject to examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification." Accordingly, "[u]nder Evid.R. 801(D)(1)(c), a statement is not hearsay if (1) the declarant testifies at trial or a hearing and is subject to cross-examination on that statement, (2) it identifies a person soon after perceiving him, and (3) the circumstances demonstrate the reliability of that identification." *State v. Ramos-Aquino*, 10th Dist. No. 09AP-975, 2010-Ohio-2732, ¶ 11.

{¶ 37} The state maintains the above requirements of Evid.R. 801(D)(1)(c) were met in this case. We agree and conclude that the prior out-of-court statements were admissible as substantive evidence under that rule.

{¶ 38} Here, both Mann and Irvin testified at trial and were subject to cross-examination as to their statements made on the 911 recording and to law enforcement officers at the scene in which they identified appellant and the co-defendant. Further, the statements at issue were "of identification of a person soon after perceiving" her (i.e., the 911 call was placed within 2-5 minutes of the shooting and the victims spoke to police officers at the scene shortly after the 911 call). *State v. Anderson*, 154 Ohio App.3d 789, 2003-Ohio-5439, ¶ 75 (7th Dist.). *See also State v. Wagner*, 5th Dist. No. 03 CA 82, 2004-Ohio-3941, ¶ 64 (trial court properly admitted statements as not hearsay under Evid.R. 801(D)(1)(c) where both victims testified at trial, both were subject to cross-examination regarding statements identifying appellant as the perpetrator, and the

statements "were one of identification of appellant"). We also agree with the state that the circumstances demonstrated the reliability of the prior identification, as the victims were acquainted with both appellant and the co-defendant. *See*, *e.g.*, *State v. Young,* 5th Dist. No. 14CA25, 2015-Ohio-2075, ¶ 41 (finding out-of-court identification of informant reliable under Evid.R. 801(D)(1)(c) because informant "was familiar with appellant" and positively identified the appellant in a photo array within hours of crime).

{¶ 39} We note that the failure of a declarant to make an in-court identification under Evid.R. 801(D)(1)(c) "is irrelevant to the issue of admissibility of [the] prior identification." *Ramos-Aquino* at ¶ 11, citin*g State v. Vanatter*, 10th Dist. No. 86AP-1043 (June 11, 1987). *See also United States v. O'Malley*, 796 F.2d 891, 899 (7th Cir.1986) (interpreting the federal counterpart rule (i.e., Fed.Evid.R. 801(D)(1)(c)), and holding that nothing "prohibits the introduction of out-of-court statements identifying the defendant made by the declarant who at trial admitted that he made the prior identification but now denies that the defendant was the same involved in the crime"). Ohio courts have observed that the rationale for Evid.R. 801(D)(1)(c) is " 'that the perception made nearer the event is at least as likely, if not more likely, to be accurate than a subsequent identification in the court room.' " *State v. Houston*, 8th Dist. No. 64574 (Jan. 13, 1994), quoting Staff Note to Evid.R. 801(D). Further, where the record establishes that the prior identification satisfies the factors for admissibility under Evid.R. 801(D)(1)(c), that rule permits the introduction of such evidence "for the truth of the matter asserted." *Ramos-Aquino* at ¶ 11.

{¶ 40} Appellant contends the statements should not have been admitted as non-hearsay because of the fact Mann and Irvin already knew appellant and the co-defendant. In support, appellant relies primarily on two cases from other jurisdictions, *Oregon v. Hartley*, 289 Ore.App. 25 (2017), and *State v. Robinson*, 718 N.W.2d 400 (Minn.2006). We do not, however, find either case applicable to Ohio law interpreting Evid.R. 801(D)(1)(c). In *Hartley,* the Oregon Court of Appeals relied on a Legislative Commentary to the Oregon Evidence Code to hold that "OEC 801(4)(a)(C) is not to be read literally" and that "to qualify as nonhearsay, the identification *must result from*, and not merely follow, the declarant's perception of the person." (Emphasis sic.) *Id.* at 31. In *Robinson*, the Supreme Court of Minnesota held that Minnesota's version of "Rule

801(d)(1)(C) does not extend to the out-of-court accusation against an offender whose identity was well-known to the victim." *Id.* at 408.

{¶ 41} Appellant cites no Ohio courts that have relied on the above authorities in interpreting Ohio's version of Evid.R. 801(D)(1)(c). We note that Ohio courts, by contrast, have deemed evidence that a declarant was identifying an individual with whom they were acquainted as demonstrating indicia of reliability. *See State v. Lumpkin*, 2d Dist. No. 90 CA 82 (Oct. 25, 1991) (where declarant testified at trial, was subject to cross-examination, identification statement was made no later than an hour after incident, and declarant was "identifying a person with whom she was acquainted," such circumstances "tend to establish that [declarant's] identification was reliable"); *State v. Ingram*, 10th Dist. No. 06AP-984, 2007-Ohio-7136, ¶ 71 (finding "significant," in considering reliability of prior identification under Evid.R.801(D)(1)(c), that declarant was "familiar with appellant after having previously seen him" at store); *State v. Mitchell*, 2d Dist. No. 24797, 2012-Ohio-3722, ¶ 35 (testimony by witnesses identifying individual they knew as "Slim" as the shooter met requirements for admissibility under Evid.R. 801(D)(1)(c) as "[t]hey were subject to cross examination, their identifications were made soon after the event, and the circumstances demonstrated reliability insofar as they knew [defendant] beforehand").

{¶ 42} Appellant also challenges the identification procedure itself with respect to the single suspect photos of appellant and the co-defendant. Appellant contends the identification procedure used by police officers, based on a single photograph, was unduly suggestive.

{¶ 43} Ohio courts have rejected similar challenges in cases where, as here, the danger of misidentification was lessened by the fact the victim(s) already knew the alleged perpetrator. *See State v. Nitsche*, 8th Dist. No. 103174, 2017-Ohio-529, ¶ 29 (any challenge of pre-trial identification as being tainted by single photograph would have been futile as victim knew defendant and identified him by nickname prior to seeing photograph); *State v. Barnett*, 67 Ohio App.3d 760, 769 (4th Dist.1990) (trial court could properly determine that pre-trial identification in which witness was shown single photograph was "not even remotely likely to create a likelihood of misidentification" where witness testified the appellant was a regular customer in store, she knew his first name prior to identification, and she had seen him twice on the date of the robbery); *State*

*v. Henderson*, 6th Dist. No. L-10-1122, 2012-Ohio-1396, ¶ 29 (use of single photograph of defendant not unduly suggestive; strongest fact was victim's familiarity with defendant before he offended and "picture was 'to confirm the identity of the suspect' ") (emphasis omitted.) In the instant case, although no challenge was raised at trial as to the identification procedure with respect to the photographs (nor as to their admission into evidence as state's exhibit Nos. 14-17), we find the trial court could have reasonably determined, under the facts and circumstances presented, that the procedures employed did not create a substantial likelihood of misidentification.

{¶ 44} Here, based on the plain language of the rule, the requirements of Evid.R. 801(D)(1)(c) were met, and the victims' statements were therefore admissible as substantive evidence. Accordingly, had an objection been made, the trial court "would have acted within its discretion in determining that all prerequisites to admissibility under Evid.R. 801(D)(1)(c) had been met." *State v. Anderson*, 2d Dist. No. 13003 (Mar. 23, 1994).

{¶ 45} Even assuming, however, we were to find the statements at issue to be hearsay, we would agree with the state's further contention that the statements were admissible as exceptions to hearsay under Evid.R. 803(2) (excited utterances) and/or Evid.R. 803(1) (present sense impressions). In accordance with Evid.R. 803, "present sense impressions and excited utterances are not excluded by the hearsay rule, even though the declarant is available as a witness." *State v. Given*, 7th Dist. No. 15 MA 0108, 2016-Ohio-4746, ¶ 25.

{¶ 46} Evid.R. 803(1) allows the admission of statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Pursuant to Evid.R. 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the rule against hearsay. With respect to present sense impressions, "the declarant need not be under 'stress of excitement caused by the event or condition,' as required for an excited utterance; rather, the primary focus is whether the statement was contemporaneous with the perceived event or condition." *State v. Crowley,* 2d Dist. No. 2009 CA 65, 2009-Ohio-6689, 14.

{¶ 47} Courts have noted that the hearsay exceptions for present sense impressions and excited utterances reflect " 'an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event' " and that " 'the key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter.' " *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, ¶ 35 (2d Dist.), quoting *State v. Ellington*, 8th Dist. No. 84014, 2004-Ohio-5036, ¶ 10. Thus, " '[b]y making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived -- a fact which obviously detracts from the statement's trustworthiness.' " *Id.*

{¶ 48} Under Ohio law, "911 calls are generally admissible as excited utterances or present sense impressions." *State v. Gray*, 10th Dist. No. 06AP-15, 2007-Ohio-1504, ¶ 11, citing *State v. Banks*, 10th Dist. No. 03AP-1286, 2004-Ohio-6522; *State v. Holloway*, 10th Dist. No. 02AP-984, 2003-Ohio-3298. *See also State v. Rose*, 8th Dist. No. 89457, 2008-Ohio-1262, ¶ 42 ("Precedent overwhelmingly supports the conclusion that 911 calls are admissible either as excited utterances or present sense impressions."); *State v. Jackson*, 2d Dist. No. 2004-CA-24, 2005-Ohio-6143, ¶ 15, quoting *State v. Tibbetts*, 92 Ohio St.3d 146, 158-59 (2001) (911 call "properly admissible as a present-sense impression, because [caller's] statement was 'describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter' "); *State v. Williams*, 6th Dist. No. L-08-1371, 2009-Ohio-6967, ¶ 64 (911 call, made "just minutes after" incident, properly admitted as an excited utterance).

{¶ 49} In the present case, the 911 call included the following exchange:

> 911 DISPATCHER: Okay. And what's going on there?
>
> MS. IRVIN: Oh, my God. This girl – me and my friend just pulled up to my house, and we noticed there was a car already sitting outside. And a girl – we know the girl. She got out and shot at my house. Like shot at me and my house. There's bullet holes in my house. And drove off in a truck.
>
> 911 DISPATCHER: How long ago was this?

MS. IRVIN:  I don't know.  It was like five minutes ago.  Not even five minutes.  Probably two minutes ago.

911 DISPATCHER:  Okay.  And was anybody hit?

MS. IRVIN:  Oh, my gosh.  No, there wasn't nobody hit.  My house is like the third one.

911 DISPATCHER:  What's her name?

MS. IRVIN:  Her name is Sommer Steward.  It was two of them.  So her and her cousin.

MS. MANN:  (Inaudible.)

911 DISPATCHER:  (Inaudible.)

MS. IRVIN:  Yeah, her niece.  Her niece's name is Mi Angel Steward.  Her niece was driving, and she's already wanted for felonious assault.  And the girl Sommer Steward is the one who was shooting.

(Tr. Vol. II at 42-43.)

{¶ 50} Here, the record reflects the 911 call was placed within two to five minutes after the shots were fired.  According to Irvin, the shots were fired "at me and my house," therefore implicating a startling event.  (Tr. Vol. II at 47.)  Further, the declarant identified appellant as the shooter in reaction to the event.  Based on review of the 911 transcript, the trial court could have reasonably concluded the statements were made by the declarant immediately after perceiving the event and/or while the declarant was under the stress of excitement caused by the event, and therefore the 911 call was admissible as an excited utterance and/or present sense impression exception to the hearsay rule.

{¶ 51} Accordingly, because the statements at issue were admissible as non-hearsay under Evid.R. 801(D)(1)(c) and, in any event, qualified under exceptions to the rule against hearsay, they were properly admissible as substantive evidence.  Having addressed appellant's arguments as to the admissibility of the out-of-court court statements as substantive evidence, we turn to her sufficiency of the evidence challenge in the context of the trial court's ruling denying her motion for judgment of acquittal.

{¶ 52} As noted, the jury returned verdicts finding appellant guilty of felonious assault and improperly discharging a firearm. R.C. 2903.11 defines the offense of felonious assault, and R.C. 2903.11(A)(2) states in part: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2923.161 sets forth the offense of improperly discharging a firearm at or into a habitation. R.C. 2923.161(A)(1) states in part: "No person, without privilege to do so, shall knowingly * * * [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual."

{¶ 53} In the present case, the state argues sufficient evidence was presented to establish appellant's guilt based on the victims' statements to the 911 operator, their positive identifications of appellant at the scene, the corroborating photographs and physical evidence showing bullet strikes to Irvin's residence, and the discovery of the vehicle matching the description and license number provided by the victims shortly after the offense. We agree.

{¶ 54} We note that this court, in considering a sufficiency challenge raised by co-defendant Mi A. Steward, concluded that "the 911 recording, combined with Mann's and Irvin's admissions at trial that they made the incriminating statement heard on the recording, provides sufficient evidence to prove, beyond a reasonable doubt, [Mi A. Steward] was the driver of the vehicle used by Sommer to arrive at the crime scene before the commission of the offense and to flee the scene after the shooting." *Steward* at ¶ 25.

{¶ 55} We similarly find, in viewing the evidence presented in a light most favorable to the prosecution, that the 911 recording, as well as the admissions of the witnesses and the other corroborating evidence, provided sufficient evidence on which the trier of fact could conclude that appellant fired the shots at the residence and/or at the victims. Accordingly, because the state presented sufficient evidence to prove each element of the offenses beyond a reasonable doubt, the trial court did not err in denying appellant's Crim.R. 29 motion for judgment of acquittal.

{¶ 56} Based on the foregoing, appellant's first assignment of error is not well-taken and is overruled.

{¶ 57} Under the second assignment of error, appellant asserts the trial court committed plain error in failing to instruct the jury that the out-of-court statements of

Mann and Irvin were admissible only for purposes of impeachment. Appellant maintains that, absent such an instruction, the jury was permitted to consider these impeachment statements as substantive evidence.

{¶ 58} However, having rejected appellant's underlying premise (i.e., her claim the out-of-court statements were admissible only for impeachment purposes) in addressing the first assignment of error, we find no merit to this argument. Because the statements were admissible as substantive evidence, the trial court did not commit error, plain or otherwise, in failing to give an instruction limiting the jury to consideration of such statements solely for impeachment purposes. *See Anderson* at 7-8 (because videotape "was substantive evidence under Evid.R. 801(D)(1)(c)," trial court "properly declined to provide a limiting instruction").

{¶ 59} Appellant's second assignment of error is not well-taken and is overruled.

{¶ 60} We will address appellant's third and fourth assignments of error in inverse order. Under the fourth assignment of error, appellant asserts the trial court erred in denying her motion to exclude the firearm evidence recovered during the execution of the search warrant at appellant's residence. Appellant notes defense counsel moved pre-trial to exclude such evidence as irrelevant and prejudicial, but the trial court denied the motion. Appellant argues the firearm was not identified by Irvin or Mann as the one carried by the shooter, and the report of the firearms expert did not conclusively establish the firearm had been used during the incident. According to appellant, admission of the evidence as to the firearm was unfairly prejudicial.

{¶ 61} Pursuant to Evid.R. 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, in accordance with Evid.R. 403(A), "even relevant evidence is not admissible if 'its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' " *State v. Howard*, 9th Dist. No. 26569, 2013-Ohio-3120, ¶ 6, quoting Evid.R. 403(A).

{¶ 62} We note, in the appeal of appellant's co-defendant (Mi A. Steward), the co-defendant also challenged the same firearm evidence, i.e., asserting that "the trial court erred when it admitted evidence of the firearm found in Sommer's home." *Steward* at

¶ 45. This court rejected that argument, initially finding that the firearm was relevant "when offered to prove [the co-defendant's] accomplice [i.e., appellant Sommer Steward] had access to a weapon that could not be excluded as the weapon used in the commission of the offenses." *Id.* at ¶ 49. This court also rejected the co-defendant's argument that the firearm should have been excluded under Evid.R. 403(B), holding that "the .357 magnum found in the home of [appellant Sommer Steward] was probative of [Mi A. Steward's] guilt given the complicity charge." *Id.* at ¶ 50. This court observed that "[h]ad this case not involved the use of a firearm or had the forensic analysis excluded the possibility that the .357 magnum was used in the shooting, [Mi A. Steward's] claim of unfair prejudice may have merit." *Id.* This court determined, however, on the record presented, the trial court did not abuse its discretion "when it ruled that the danger of unfair prejudice to [Mi A. Steward] did not substantially outweigh the relevance of the evidence." *Id.*

{¶ 63} We similarly find no error by the trial court in its determination that the evidence was admissible in light of the forensic analysis indicating the weapon was capable of firing the projectiles found in appellant's residence and that its relevance outweighed the danger of unfair prejudice. *See State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 84 (trial court did not err in admitting evidence of ammunition found in defendant's residence, despite failure of state to link this ammunition to shell casings found at crime scene, as defendant's possession of numerous rounds of ammunition shortly after murder "tended to prove that he had timely access to the means to commit the murder," and "tended to prove he had access to a weapon of the type used to kill [victim]").

{¶ 64} Accordingly, appellant's fourth assignment of error is not well-taken and is overruled.

{¶ 65} Under the third assignment of error, appellant asserts her trial counsel rendered ineffective assistance of counsel by failing to: (1) file a motion to suppress all information pertaining to the out-of-court identifications of appellant by Mann and Irvin, (2) object to the playing of the 911 recording, (3) request a limiting instruction confining the use of the out-of-court statements of Mann and Irvin to impeachment only, and (4) renew her objection to the introduction of evidence regarding the firearm recovered from appellant's home during execution of the search warrant.

{¶ 66} In order to prevail on a claim of ineffective assistance of counsel, appellant "must satisfy a two-prong test." *State v. Kennard*, 10th Dist. No. 15AP-776, 2016-Ohio-2811, ¶ 14. Under the first prong, appellant must "demonstrate that his trial counsel's performance was deficient." *Id.*, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If appellant "can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance." *Id.* Further, "[t]he failure to make either showing defeats a claim of ineffective assistance of counsel." *Id.*, citing *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989). In order to "demonstrate that counsel's performance was deficient, appellant must show that his counsel committed errors which were ' "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ' " *Id.* at ¶ 15, quoting *State v. Phillips*, 74 Ohio St.3d 72, 101 (1995), quoting *Strickland* at 687.

{¶ 67} We first address appellant's contention that her trial counsel should have filed a motion to suppress all information pertaining to the out-of-court identifications by Mann and Irvin, including the photo identification evidence. Appellant argues the identifications were unreliable, and that the photo identification procedure utilized (based on the display of a single photograph) was unduly suggestive.

{¶ 68} Under Ohio law, "[t]rial strategy may include a motion to suppress evidence." *State v. Altman*, 5th Dist. No. 06 CA 117, 2007-Ohio-6761, ¶ 20. However, "[t]rial counsel is not per se ineffective when it fails to file a motion to suppress." *State v. Riffle*, 8th Dist. No. 107352, 2019-Ohio-3271, ¶ 9, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). Rather, "[c]ounsel's failure to file a motion to suppress constitutes ineffective assistance only when the defendant can show that the motion 'would have "had a reasonable probability of success" and affected the outcome of the case.' " *Id.*, quoting *State v. Patterson*, 8th Dist. No. 105265, 2017-Ohio-8318, ¶ 35 (8th Dist.), quoting *State v. Sanchez*, 8th Dist. No. 103078, 2016-Ohio-3167, ¶ 22.

{¶ 69} In addressing the first assignment of error, we concluded that evidence as to the victims' prior statements of identification was properly admissible under Evid.R. 801(D)(1)(c) as non-hearsay and/or an exception to the hearsay rule (under Evid.R. 803(1) and Evid.R. 803(2)). We further found the trial court could have reasonably determined that the procedures with respect to the photo identifications did not create a

substantial likelihood of misidentification in light of the circumstances, including the familiarity of the victims with appellant and the co-defendant. Based on our disposition of the earlier assignment of error, we reject appellant's claim that her counsel was ineffective in failing to file a motion to suppress the pre-trial identification evidence. *See*, *e.g.*, *State v. Messer-Tomak*, 10th Dist. No. 07AP-720, 2008-Ohio-2285, ¶ 30 (trial counsel not ineffective in failing to file motion to suppress where pre-trial identification of defendant by witness satisfied the requirements of Evid.R. 801(D)(1)(c)). Further, having rejected appellant's argument the out-of-court statements on the 911 recording did not qualify for admission under any exceptions to the hearsay rule, appellant cannot demonstrate her attorney's representation was deficient with respect to that issue.

{¶ 70} Similarly, in addressing the second assignment of error, we rejected appellant's contention the trial court committed plain error in failing to provide a limiting instruction as to the use of the identification evidence for impeachment purposes only and not as substantive evidence. Accordingly, appellant has failed to show deficient performance by trial counsel in not requesting such an instruction.

{¶ 71} Finally, in addressing the fourth assignment of error, we concluded the trial court did not err in failing to exclude evidence of the firearm recovered at appellant's residence. Appellant therefore can show neither deficient performance nor prejudice as a result of trial counsel's failure to renew her objection to the introduction of that evidence.

{¶ 72} Accordingly, the third assignment of error is not well-taken and is overruled.

{¶ 73} Under the fifth assignment of error, appellant challenges her convictions as against the manifest weight of the evidence. Appellant argues the state presented a case in which it impeached its two key witnesses, Mann and Irvin, with their prior inconsistent statements. Appellant contends these witnesses attested at trial to not having seen appellant during the event, and neither identified her as the shooter in front of the jury.

{¶ 74} In addressing a challenge to the manifest weight of the evidence, an appellate court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State*

*v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  A reviewing court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Id.*

{¶ 75} This court has previously noted that "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial."  *State v. Williams*, 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 16, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21.  Rather, "[t]he trier of fact is free to believe or disbelieve all or any of the testimony."  *Id.*, citing *State v. Jackson*, 10th Dist. No. 01AP-973 (Mar. 19, 2002).  Further, "[i]t is the province of the factfinder to determine the truth from conflicting evidence, whether the conflicting evidence comes from different witnesses or is contained within the same witness's testimony."  *State v. Oteng*, 10th Dist. No. 14AP-466, 2015-Ohio-1231, ¶ 72, citing *State v. Eisenman*, 10th Dist. No. 10AP-809, 2011-Ohio-2810, ¶ 19.

{¶ 76} In the present case, the primary issue for the jury's consideration was whether it found more credible the trial testimony of Mann and Irvin, in which they failed to identify appellant as the shooter, or their out-of-court statements in which both witnesses identified appellant as the individual who fired the weapon at Irvin's residence. As noted by the state, the trier of fact was apprised of the victims' friendship with appellant and their admitted reluctance to testify at trial.

{¶ 77} The jury's task to make a credibility determination regarding the out-of-court statements of Mann and Irvin, in contrast to their trial testimony, was discussed by this court in addressing a similar manifest weight challenge by appellant's co-defendant, Mi A. Steward.  Specifically, in *Steward*, this court noted "[t]he jury had to determine whether the victims were telling the truth when they spoke to the 911 operator and to police on the night of the shooting or at trial when they denied seeing appellant at the crime scene."  *Id.* at ¶ 28.  We further noted "the jury was free to believe the statements Mann and Irvin made on the 911 tape and to the police on the night of the shooting and disbelieve their claims at trial that they did not see appellant in the cul-de-sac on the night of the shooting."  *Id.*

{¶ 78} In addressing the co-defendant's specific manifest weight argument, this court observed that "the jury heard both Irvin and Mann admit they did not want to give

testimony harmful to [Mi A. Steward], as they had been childhood friends with appellant and Sommer," and the jury "also heard Irvin acknowledge that in the 14 months between her police interview and the trial of this matter, she never informed the police that she did not see [Mi A. Steward] driving the vehicle on the night of the shooting and falsely identified [Mi A. Steward] and Sommer as the offenders." *Id.* at ¶ 29. This court cited the fact Mann "was able to accurately perceive and recall the license plate number of the vehicle driven by the perpetrators on the night of July 22, 2017," and the evidence "shows * * * the license plate was displayed inside the rear window of the suspect vehicle and that it matched the plate number of a bluish-green Honda CRV, fitting the general description, found at Sommer's residence." *Id.*

{¶ 79} In rejecting the co-defendant's manifest weight challenge, this court concluded the jury "took into account the inconsistencies in the statements the victims admitted making immediately following the crimes and their trial testimony," and the trier of fact "obviously believed the statements Irvin and Mann made to the 911 dispatcher and the statements they gave to police, even though both witnesses claimed, at trial, they did not see appellant at the scene of the crime." *Id.* at ¶ 30.

{¶ 80} In reviewing appellant's manifest weight challenge in the instant case, we similarly conclude the jury was in the best position to consider the motivations of the witnesses in determining whether to believe or discredit their trial testimony. Here, it was within the province of the jury to credit the out-of-court statements of the victims, made at the time of the events and identifying appellant as the shooter, over testimony at trial that they did not actually observe appellant fire the shots. *See*, *e.g.*, *State v. Reaves*, 130 Ohio App.3d 776, 784 (1st Dist.1998) (where jury had before it two versions from same witness, "the earlier statements inculpating [the defendant] given to the police under circumstances which fully comported with the requirements of Evid.R. 801(D)(1)(c), and the statement at trial more than two years later exonerating [the defendant] * * *, it was entirely within the province of the jury to pick which version it believed"); *Garfield Heights v. Gomolka,* 8th Dist. No. 75480 (Mar. 30, 2000) (trier of fact, in assessing credibility of witness, did not lose its way in choosing to believe witnesses' original statement to police made shortly after events "and not her in-court version of the events").

{¶ 81} On review, we conclude the jury did not clearly lose its way or create a manifest miscarriage of justice in returning verdicts finding appellant guilty of felonious assault and improperly discharging a firearm.  Thus, her convictions were not against the manifest weight of the evidence.

{¶ 82}  Accordingly, the fifth assignment of error is not well-taken and is overruled.

{¶ 83}  Based on the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

———————————————