JOURNAL ENTRY AND OPINION
{¶ 1} David Ellington[1] appeals from a jury verdict, following a trial before Judge Peggy Foley Jones, that found him guilty of possession of drugs and drug trafficking. He claims ineffective assistance of counsel, prosecutorial misconduct, the denial of admissible hearsay testimony, and that the verdict is not supported by sufficient evidence. We affirm in part, reverse in part and remand for resentencing.
 {¶ 2} From the record we glean the following: In March 2003, Ellington claimed that he left his apartment at 3297 West 88th Street in Cleveland to try to sell some jewelry to "Butch," who lived in an apartment at 9302 Denison Avenue. As he walked westbound on Denison, he approached a parked car with two occupants: a woman, later identified as a Confidential Informant ("CI"), and a driver, later identified as Detective John Graves.[2] He asked whether the woman would like to purchase two gold medallions or necklace charms and, when she said that she was not interested, he left.
 {¶ 3} He contended he walked to a nearby Dairy Mart, then back to West 88th Street, then to somewhere between 94th and 95th Street, and then back to the Dairy Mart, passing Butch's apartment building three times, but not stopping. He claimed that the vehicle he had approached drove by, stopped, and someone asked if he had a "20," i.e., twenty dollars worth of crack cocaine. He responded that he did not sell crack, but he knew someone who did. That someone was Ronald Clay.
 {¶ 4} Ellington got into the car and told Detective Graves to drive to 9302 Denison, a four-suite building where both Clay and Butch each had an apartment. Detective Graves gave the CI a twenty dollar bill, Ellington handed him two gold earrings to hold as collateral until they returned with the crack, and he and the CI walked to the side of the building. Ellington knocked on a window, and he and the CI met Clay at the front door. Ellington asked if Butch was available, and the CI asked for the "20." Clay went inside and returned with the crack cocaine. When Ellington returned to the car, he was arrested and later indicted on one count of possession of drugs[3] and two counts of drug trafficking[4] with juvenile specifications.[5]
 {¶ 5} He was sentenced to two years of community control sanctions.[6] It is from this verdict that Ellington appeals in the assignments of error set forth in the appendix to this opinion.
I. HEARSAY EXCEPTION
 {¶ 6} Ellington testified that when he was arrested, the CI told Detective Graves that, "[h]e didn't buy it. He didn't purchase no dope." The State objected, and the statement was ruled inadmissible. On appeal, he claims this statement lies within the present sense impression exception to the hearsay rule.
 {¶ 7} Evid.R. 803 states in pertinent part:
{¶ 8} "Hearsay Exceptions; Availability of DeclarantImmaterial The following are not excluded by the hearsay rule,even though the declarant is available as a witness:(1) Presentsense impression. A statement describing or explaining an eventor condition made while the declarant was perceiving the event orcondition, or immediately thereafter unless circumstancesindicate lack of trustworthiness."[7]
 {¶ 9} The rationale for allowing such statements is based on the lack of time available for reflection, and immediacy is strictly required.[8]
 {¶ 10} There is an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event.[9] Moreover,"The key to the statement's trustworthiness is the spontaneityof the statement, either contemporaneous with the event orimmediately thereafter. By making the statement at the time ofthe event or shortly thereafter, the minimal lapse of timebetween the event and statement reflects an insufficient periodto reflect on the event perceived — a fact which obviouslydetracts from the statement's trustworthiness."[10]
 {¶ 11} Detective Graves testified that both the CI and Ellington walked from the building and got into the car. Ellington asked for his jewelry, which the detective returned, and then he drove to Ellington's apartment. He drove slowly because he was waiting for backup and, after an undisclosed amount of time, pulled the car over, drew his gun, and made the arrest.
 {¶ 12} Ellington's testimony was slightly different. He testified that after the CI bought the crack cocaine, a transaction he implies that he did not watch, he walked down the driveway and into a parking lot where, for several moments, he thought about how to sell the jewelry. Because it was raining, he asked the CI for a ride home, she agreed, and he got into the car. Upon reaching West 88th, Ellington claimed the detective put a gun to his head, threatened to "blow his brains out" and arrested him. It was after this confrontation Ellington contends that the CI told the detective that he did not buy the crack cocaine.
 {¶ 13} It is Ellington's contention that the CI's statement buttressed his testimony that he was not a middleman in the drug buy, nor acting in concert with Clay. He even suggests that "if he was helping anyone he was helping the CI, * * * by telling her where she could purchase drugs."[11]
 {¶ 14} As noted, immediacy is required before a declaration qualifies as a present sense impression. Here the question of immediacy is tenuous. An examination of the testimony of both Detective Graves and Ellington reveals that some time elapsed between the actual drug buy and the CI's purported statement which, Ellington contends, would support a not guilty verdict on all counts. That time span forecloses a suggestion of immediacy.[12]
 {¶ 15} Moreover, assuming argunendo that the statement qualified as an excited utterance,[13] it appears to support only the defense to the possession charge, not to drug trafficking. This assignment of error lacks merit.
{¶ 16} INEFFECTIVE ASSISTANCE OF COUNSEL
 {¶ 17} Ellington claims his attorney was ineffective because he failed to compel the disclosure of the CI's identity. He submits that her testimony was crucial to his defense because Clay's testimony was ambiguous about who asked for the drugs and to whom he gave the crack.
 {¶ 18} In order to reverse a conviction for ineffective assistance of counsel, the defendant must show the following: First, that his lawyer's performance was deficient. Second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.[14]
 {¶ 19} The Ohio Supreme Court held that the burden falls on the party claiming ineffective assistance of counsel to demonstrate that counsel's performance fell below an objective standard of reasonableness and that the party was prejudiced thereby.[15] Prejudice exists only where the lawyer's performance renders the result of the trial unreliable or the proceeding unfair.[16] The Ohio Supreme Court adopted a similar standard in State v. Lytle[17] by stating:
{¶ 20} "When considering an allegation of ineffectiveassistance of counsel, a two-step process is usually employed.First, there must be a determination as to whether there has beena substantial violation of any of defense counsel's essentialduties to his client. Next, and analytically separate . . . theremust be a determination as to whether the defense was prejudicedby counsel's ineffectiveness."
 {¶ 21} The prejudice arms of both Strickland and Lytle is a "but for" standard — i.e., is there a reasonable probability that but for the lawyer's errors, the outcome would be different?[18] Reasonable probability is a probability sufficient to undermine confidence in the outcome.[19] The totality of the circumstances, not isolated instances of an allegedly deficient performance, is reviewed.[20]
"Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'"[21]
 {¶ 22} Although Ellington claims that his attorney's failure to compel disclosure of the CI's identity prevented valuable testimony from being heard, failure to call a witness does not constitute ineffective assistance of counsel absent a showing that the testimony of the witness would have assisted the defense.[22] Further, a defendant is entitled to disclosure of the identity of a confidential informant when "the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges."[23] He has the burden of establishing the need for such disclosure and,[24] in meeting this burden, he must set forth more than mere speculation that "the informer might somehow be of some assistance in preparing the case * * *."[25]
 {¶ 23} Ellington claims he did not ask Clay for the "20" of crack cocaine, and he was not given the drugs after the CI paid for them. Clay testified that he thought he gave the rock of crack cocaine to Ellington.[26] While one could speculate that the CI's testimony may have been helpful in determining whether Ellington ever had possession of or purchased the drugs in her presence, there is no allegation that she would have supported Ellington's defense to the trafficking offense.
 {¶ 24} In light of our determination, infra, on the sufficiency of evidence, we find this assignment of error moot.
{¶ 25} PROSECUTORIAL MISCONDUCT
 {¶ 26} Ellington argues that the prosecutor's statements during closing arguments and during his cross-examination amounted to prosecutorial misconduct. To prevail on such a claim, one must show that the challenged conduct was improper and that the improprieties deprived a defendant of a fair trial.[27]
The issue of prejudice is determined by reference to the entirety of the closing argument or the questioning. Prejudice is less likely to be found if the misconduct was an "isolated incident."[28]
 {¶ 27} In his closing argument, the prosecutor said: "[s]o basically the defendant just recently took the stand and got off and said they all lied. It didn't happen that way. They are wrong. The detective lied. He's wrong." He referred to Clay as "the only guy who has enough gumption to come in here and tell you the truth," and when he was cross-examining Ellington, he asked him to comment as to Clay's veracity. All this, Ellington contends, was highly prejudicial.
 {¶ 28} In State v. Hill,[29] the court outlined four elements to be considered in determining whether the prosecutor's statements amounted to misconduct: (1) the nature of the remarks; (2) whether an objection was made by opposing counsel; (3) whether corrective instructions were given; and (4) the strength of the evidence against the defendant. The Ohio Supreme Court added an additional factor to be considered in determining whether remarks constitute misconduct, that is, whether the remarks prejudicially affected substantial rights of the defendant.[30]
 {¶ 29} Although Ellington chose to highlight only one sentence of the prosecutor's closing statements, the relevant passage stated in its entirety:
{¶ 30} "You know you have to determine the credibility of thepeople that you are going to believe in this case. You do that,you know, not with blinders on, but you use your common sense andyour life's experiences.
 {¶ 31} So basically the defendant just recently took the standand got off and said they all lied. It didn't happen that way.They are wrong. The detective lied. He's wrong."
 {¶ 32} Although these comments were slightly dramatic in their attempt to summarize Ellington's testimony, the State is entitled to a certain degree of latitude in summation.[31]
 {¶ 33} The jury instruction, however, provided guidance:
{¶ 34} "You have to determine the credibility or thebelievability of the witnesses who testify. You will apply thetests of truthfulness that you use in your own daily lives. . . ."
 {¶ 35} Although Ellington objected to the comment that Clay was the only witness "that had the gumption to tell the truth," he did not object to the statement regarding Ellington's own testimony, and has not shown on appeal that the comments, whether alone or collectively, were so prejudicial as to deprive him of a fair trial. A party waives error by failing to make proper objections to inappropriate statements because the judge is deprived of the opportunity to correct them.[32]
 {¶ 36} Further, during cross-examination, generally questioning is "permitted on all relevant matters and matters affecting credibility."[33] The scope of cross-examination lies within the sound discretion of the judge in relation to the particular facts of the case.[34]
 {¶ 37} In State v. Garfield,[35] the court stated:
{¶ 38} "In our system of jurisprudence, wide latitude isallowed on cross-examination of a witness. Cross-examination isinvaluable because it is a method of testing the accuracy,truthfulness and credibility of testimony. The limits to which awitness may be cross-examined rests in the sound discretion ofthe trial judge and this should not be interfered with unless thecourt abuses its discretion to the prejudice of the partycomplaining."[36]
 {¶ 39} We cannot say that when the prosecutor questioned Ellington on the contrary testimony of several witnesses, he exceeded the scope of his authority, nor can we say that Ellington was prejudiced by these remarks. This assignment of error lacks merit.
{¶ 40} SUFFICIENCY OF THE EVIDENCE
 {¶ 41} Ellington claims the evidence was insufficient to prove that he committed crimes when the only evidence showed that he responded to questions posed by a CI. He claims that since the CI bought the drugs at the direction of the police, she was not committing an offense and, therefore, he cannot be charged with aiding and abetting.
 {¶ 42} A sufficiency claim presents a question of law that we review de novo[37] to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[38]
Ellington's argument would have us find that any time a CI is involved, a defendant cannot be charged with crimes amounting to aiding and abetting simply because the CI is acting on behalf of the police and not independently committing the felonious acts. Such an interpretation not only ignores the value of CI's in general, it discounts Ellington's own actions in this matter.
 {¶ 43} Drug Trafficking is defined as:
"(A)No person shall do any of the following:
 (1) Sell or offer to sell a controlled substance;
* * *"[39]
 {¶ 44} The State alleged that Ellington aided or abetted Clay in the commission of drug trafficking. The judge instructed the jury:
{¶ 45} "An aider or abettor is defined as when one or twopersons have a common purpose to commit a crime and one does onepart and the other person performs the other part.
 {¶ 46} Aid means to help, assist or strengthen. Abet means toencourage, counsel or assist."
 {¶ 47} The offense of complicity, R.C. 2923.03(F) provides:
{¶ 48} "Whoever violates this section is guilty of complicityin the commission of an offense, and shall be prosecuted andpunished as if he were a principal offender. A charge ofcomplicity may be stated in terms of this section, or in terms ofthe principal offense."
 {¶ 49} Ellington testified that he was looking for a man named Butch in Clay's apartment building. After leaving his home, he passed the building three times without ever going in to find Butch. When the CI asked if he had a "20," he replied that he did not sell drugs, but admitted that he voluntarily got into the undercover car and directed the driver to Clay's building, specifically stating that the residence was a known drug house. He gave the driver jewelry as collateral, got Clay's attention, then escorted the CI to the door. He was present when the drug transaction took place, and waited in the parking lot before ultimately asking the CI for a ride home.
 {¶ 50} We examine trial evidence using the Thompkins
standard and find the evidence legally sufficient to support the verdict on drug trafficking. We find, however, that there was insufficient evidence to support a conviction for possession of drugs.
 {¶ 51} Under R.C. 2925.11, no person shall, "knowingly obtain, possess, or use a controlled substance."[40] The record, however, lacks the evidence that Ellington, beyond a reasonable doubt, at any time obtained, possessed, or used a controlled substance. Detective Graves upon cross examination answered:
{¶ 52} "Q. As I understand it, you never saw the rock in thepossession of my client, did you?
 A. No, I didn't need to.
• * *
{¶ 53} Q. You never saw my client pinch any of that rockcocaine off, did you?
 A. No, I did not.
 {¶ 54} Q. He never had possession or control over Exhibit No.1, the rock?
 A. Correct.
 {¶ 55} Q. My client never had any crack cocaine on him duringthe course of this arrest, did he?
 A. No.
• * *
II. So during that course of that period of time my client didnot have any crack cocaine on him that night did he?
 {¶ 56} Not that I saw, no."
 {¶ 57} Clay testified that he could not remember whether he gave the crack to the woman or Ellington, but thought he gave it to Ellington. Ellington denied any involvement in, much less receiving or possessing any drugs. This evidence cannot support a guilty verdict for drug possession.
We find this assignment of error to have merit in part.
 {¶ 58} Neither the transcript nor the journal entry reveal what term of community control sanctions the judge would have imposed for only the trafficking offense, therefore, we reverse the sentence and remand
 {¶ 59} Judgment affirmed in part, reversed in part and remanded for resentencing.
APPENDIX A: ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED IN SUSTAINING AN OBJECTION FROM THESTATE AND PREVENTING THE ADMISSION OF TESTIMONY THAT FALLS WITHINTHE PRESENT SENSE IMPRESSION HEARSAY OBJECTION."
 "II. THE APPELLANT WAS DENIED THE RIGHT TO EFFECTIVEASSISTANCE OF COUNSEL BECAUSE HIS DEFENSE COUNSEL DID NOT ATTEMPTTO COMPEL THE DISCLOSURE OF A CONFIDENTIAL RELIABLE INFORMANT'SIDENTITY, WHOSE TESTIMONY WAS ESSENTIAL TO THE DEFENSE."
 "III. THE TRIAL COURT ALLOWED TWO INSTANCES OF PROSECUTORIALMISCONDUCT THAT AMOUNTED TO REVERSIBLE ERROR."
 "IV. THE APPELLANT HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUTDUE PROCESS OF LAW, BY WHICH HIS CONVICTIONS IN THE CASE AT BARWERE NOT SUPPORTED BY EVIDENCE SUFFICIENT TO PROVE GUILT BEYOND AREASONABLE DOUBT."
It is ordered that appellant and appellee share the costs herein taxed.
The court finds that there were reasonable ground for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., And Corrigan, A.J., Concur in Judgment Only.
[1] We note that his full name appears to be "David Lee Ellington, Jr." although the proceedings consistently refer to him only as David Ellington.
[2] The record reflects that the car contained one detective and two informants, but Ellington only refers to two occupants.
[3] R.C. 2925.11.
[4] R.C. 2925.03.
[5] R.C. 2925.01.
[6] The second count of drug trafficking was dismissed following a Rule 29 motion.
[7] Evid.R. 803(1).
[8] Neal v. Johnson, Cuyahoga App. No. 83124, 2004-Ohio-743;United States v. Lentz (E.D.Va. 2002), 282 F.Supp.2d 399, 410.
[9] Cox v. Oliver Machinery Co. (1987), 41 Ohio App.3d 28,35, 534 N.E.2d 855.
[10] Id. at 35-36.
[11] Appellant's Brief at 7 and 17.
[12] See, also, State v. Smith (November 8, 2000), Summit County App. No. 99CA007399, (statement excluded as a present sense exception when the court is unclear as to amount of time that elapsed between the actual event and the statement).
[13] Evid.R. 803(2).
[14] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S. Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.
[15] Bradley, 42 Ohio St.3d at paragraph two of the syllabus.
[16] Strictland, 466 U.S. at 694.
[17] (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623.
[18] State v. Crickon (1988), 43 Ohio App.3d 171, 175,540 N.E.2d 287.
[19] Strickland, 466 U.S. at 694.
[20] State v. Malone (December 13, 1989), Montgomery App. No. 10564.
[21] Id., quoting Smith v. Murray (1986), 477 U.S. 527, 535,106 S.Ct. 2661, 91 L.Ed.2d 434.
[22] State v. Reese (1982), 8 Ohio App.3d 202,456 N.E.2d 1253, at paragraph one of the syllabus.
[23] State v. Williams (1983), 4 Ohio St.3d 74,446 N.E.2d 779, at the syllabus.
[24] State v. Parsons (1989), 64 Ohio App.3d 63, 69,580 N.E.2d 800.
[25] Id.
[26] Clay was a co-defendant who testified for the State.
[27] State v. Phillips, 74 Ohio St.3d 72, 90, 1995-Ohio-171,656 N.E.2d 643.
[28] State v. Keenan (1993), 66 Ohio St.3d 402, 410,613 N.E.2d 203.
[29] (1977), 52 Ohio App.2d 393, 370 N.E.2d 775.
[30] State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883, 885.
[31] State v. Liberatore (1982), 69 Ohio St.2d 583, 589,433 N.E.2d 561.
[32] Columbus v. Figge (July 11, 2000), Franklin App. No. 99AP-940, citing Fensel v. Regional Transit Auth. (Oct. 11, 1979), Cuyahoga App. No. 39395.
[33] State v. Slagle (1992), 65 Ohio St.3d 597, 605,605 N.E.2d 916, quoting Evid.R. 611(B).
[34] Slagle, 65 Ohio St.3d at 605, quoting State v. Acre
(1983), 6 Ohio St.3d 140, 145, 451 N.E.2d 802.
[35] (1986), 34 Ohio App.3d 300, 303, 518 N.E.2d 568.
[36] State v. Chaney (Aug. 28, 1997), Cuyahoga App. No. 71274 (it is within the trial court's discretion to allow the prosecution, on cross-examination, to inquire whether another witness is lying.
[37] State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541.
[38] State v. Stallings, 89 Ohio St.3d 280, 289,2000-Ohio-164, 731 N.E.2d 159, quoting Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781.
[39] R.C. 2925.03.
[40] R.C. 2925.11 (A).