[Cite as *State v. Cartwright*, 2024-Ohio-5638.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JACQUAVIOUS R. CARTWRIGHT,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-57

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CR2022 0260

Judgment Affirmed

Date of Decision: December 2, 2024

APPEARANCES:

    *Allison F. Hibbard* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Jacquavious R. Cartwright ("Cartwright"), appeals the August 29, 2023 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from an August 20-23, 2022 incident during which Cartwright physically assaulted the victim (with whom he was in a romantic relationship). After that first assault, the victim sought medical treatment, but returned to Cartwright's residence when he apologized for his conduct. Thereafter, while the victim was recovering from her injuries, Cartwright again physically assaulted the victim by punching her with a closed fist, kicking her, and assaulting her with a firearm. During the second assault, Cartwright restrained the victim from leaving his residence. However, once the victim escaped, law enforcement responded to Cartwright's residence. With the assistance of the Allen County Sheriff's Office SWAT team, Cartwright eventually surrendered himself, and law enforcement searched Cartwright's residence (after obtaining warrants to conduct the searches). Through the searches, law enforcement discovered evidence that Cartwright was cultivating marijuana and that he possessed cocaine.

{¶3} On October 13, 2022, the Allen County Grand Jury indicted Cartwright on four counts: Count One of felonious assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), a second-degree felony; Count Two of kidnapping in violation of R.C.

2905.01(A)(3), (C)(1), a first-degree felony; Count Three of illegal cultivation of marihuana in violation of R.C. 2925.04(A), (C)(5)(c), a fifth-degree felony; and Count Four of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony.[1] The indictment included a firearm specification under R.C. 2941.145(A) as to Counts One and Two. On October 21, 2022, Cartwright appeared for arraignment and entered pleas of not guilty.

{¶4} On November 8, 2022, Cartwright filed a motion to suppress evidence, which the trial court denied.

{¶5} The case proceeded to a jury trial on August 22-24, 2023. On August 24, 2023, the jury found Cartwright guilty of the counts and specifications alleged in the indictment. That same day, the trial court sentenced Cartwright to a minimum term of 7 years in prison to a maximum term of 10 1/2 years in prison as to Count One; a minimum term of 6 years in prison to a maximum term of 9 years in prison as to Count Two; 12 months in prison as to Counts Three and Four, respectively; and 3 years in prison as to the firearm specifications, respectively.[2] (Doc. No. 180). The trial court ordered Cartwright to serve concurrently the prison terms imposed as to Counts Three and Four and ordered that he serve consecutively the prison terms imposed as to Counts One and Two together with the firearm specifications.

---

[1] On August 17, 2023, the State filed a motion to amend the indictment "to reflect the correct date of the alleged offense" in Counts Three and Four, which the trial court granted on August 22, 2023. (Doc. No. 161).

[2] The trial court filed its judgment entry of sentence on August 29, 2023.

Further, the trial court ordered Cartwright to serve the concurrent-prison terms as to Counts Three and Four consecutively to the consecutive-prison terms imposed as to Counts One and Two and the firearm specifications for an aggregate sentence of a minimum term of 20 years in prison (19 years of which being mandatory) to a maximum term of 23 years in prison.

{¶6} Cartwright filed his notice of appeal on September 5, 2023, and raises four assignments of error for our review. For ease of our discussion, we will begin by addressing Cartwright's third assignment of error, followed together by his first and second assignments of error, then his fourth assignment of error.

### Third Assignment of Error

**Appellant's Convictions Are Against The Manifest Weight Of The Evidence; Therefore, His Convictions Are In Violation Of The Ohio State Constitution And The Sixth And Fourteenth Amendments To The United States Constitution.**

{¶7} In his third assignment of error, Cartwright argues that his convictions are against the manifest weight of the evidence. Specifically, Cartwright contends that the evidence supporting that he committed the offenses is not credible.

*Standard of Review*

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence

and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶9} In his third assignment of error, Cartwright contends that his convictions are against the manifest weight of the evidence because the victim lacked credibility. Thus, Cartwright's argument challenging the manifest weight of the evidence extends only to his felonious assault and kidnapping convictions (along with the accompanying firearm specifications). *See State v. Haller*, 2012-Ohio-5233, ¶ 10 (3d Dist.). In other words, Cartwright offers no support for his argument that his illegal cultivation of marihuana and possession of cocaine convictions are against the manifest weight of the evidence.

{¶10} Therefore, we will begin by addressing whether Cartwright's felonious assault and kidnapping convictions (along with the accompanying firearm specifications) are against the manifest weight of the evidence. Cartwright was convicted of felonious assault under R.C. 2903.11(A)(2) and kidnapping under R.C. 2905.01(A)(3).[3] Felonious assault is defined by R.C. 2903.11, which provides, in its relevant part, that "[n]o person shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon." R.C. 2903.11(A)(2). R.C. 2905.01 sets forth the offense of kidnapping and provides, in its relevant part, that "[n]o person, by force, threat, or deception . . . shall restrain the liberty of the other person . . . "[t]o terrorize, or to inflict serious physical harm on the victim . . . ." R.C. 2905.01(A)(3).

{¶11} On appeal, Cartwright contends that his felonious-assault and kidnapping convictions (along with the accompanying firearm specifications) are against the manifest weight of the evidence because the victim's testimony was not believable. Specifically, Cartwright claims the victim's testimony was "inconsistent" because (1) she returned to Cartwright's residence "after the alleged first assault"; (2) she "lied to the detective about how she got to the hospital"; (3) she lied to medical personnel about how "she received the injuries"; (4) she made

---

[3] The accompanying firearm specifications under R.C. 2941.145(A) imposes "a three-year mandatory prison term upon an offender" if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

equivocal statements about her phone; (5) she had opportunities to escape but "did not take any action" and (6) "there were no bullet holes or fired bullets found anywhere" even though she "claimed Mr. Cartwright had fired shots . . . ." (Appellant's Brief at 12).

{¶12} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.), citing *DeHass*, 10 Ohio St.2d at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶13} Notwithstanding the alleged inconsistencies in the victim's testimony that Cartwright directs us to, the jury was able to judge those inconsistences with the balance of the victim's testimony *and* compare her testimony to the remainder of the State's evidence presented at trial. Indeed, the jury was able to assess the victim's testimony explaining her conduct in this case. Specifically, the victim testified that she lied to hospital staff regarding the injuries she sustained following the first assault because she "was scared[,] wanted to protect him[, and] didn't want him in trouble for what happened" since they were in a romantic relationship. (Aug. 22-24, 2023 Tr., Vol. I, at 166). Similarly, the victim testified that she returned to

Cartwright's residence following the first assault because she "believed his apology [and] believed he didn't mean to do it, like he said." (*Id.* at 170). The jury was also able to review the victim's testimony against the photographs depicting the injuries that she sustained.

{¶14} Moreover, the jury was able to compare the victim's version of the events to the physical evidence recovered by law enforcement. In particular, the jury was able to compare the victim's testimony that Cartwright "shot twice" at her with her text messages depicted in State's Exhibits 1 and 2 in which she contemporaneously reported to her mother that "[h]e's shooting," "[t]wice now." (Aug. 22-24, 2023 Tr., Vol. II, at 193); (State's Exs. 1-2). The jury was also able to compare that evidence with the two spent cartridge casings and the firearm recovered by law enforcement through the searches of Cartwright's residence. (*See* State's Exs. 86, 87). Relevantly, Detective Sean Neidemire ("Detective Neidemire") of the Lima Police Department, who investigated the case, testified that law enforcement looked for the actual (spent) bullets but, due to the dilapidated condition of the house, could "not find any spent actual bullets . . . ." (*Id.* at 347). Nevertheless, Kevin Kramer ("Kramer"), a forensic scientist in the firearms section of the Ohio Bureau of Criminal Investigation ("BCI"), testified that he analyzed the spent cartridge casings and concluded that the casings were fired by the firearm recovered from Cartwright's residence. (*See id.* at 329, 333, 335).

{¶15} Furthermore, Cartwright's trial counsel explored the credibility issue at trial and thoroughly cross-examined the victim. *Accord Brentley*, 2023-Ohio-2530, at ¶ 35 (3d Dist.). Accordingly, we conclude that Cartwright's argument that "[t]he inconsistences through [the victim's] testimony render her testimony as whole [sic] unreliable" is underwhelming compared to the evidence that Cartwright committed felonious assault and kidnapping (along with the accompanying firearm specifications). (Appellant's Brief at 12-13).

{¶16} Therefore, after weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the jury's credibility determination, the jury, as the trier of fact, did not clearly lose its way and create a manifest injustice. Consequently, we are not persuaded that Cartwright's felonious-assault and kidnapping convictions (along with the accompanying firearm specifications) must be reversed and a new trial ordered.

{¶17} Cartwright's third assignment of error is overruled.

**First Assignment of Error**

**Trial Counsel Was Ineffective For Failing To Object To A 911 Call And Other Statements Made By A Non-Testifying Witness**

**Second Assignment of Error**

**Trial Counsel Was Ineffective For Failing To Object To Testimony That The Defendant Was Familiar To Law Enforcement.**

{¶18} In his first and second assignments of error, Cartwright argues his trial counsel was ineffective for failing to object to impermissible hearsay and improper character evidence. In his first assignment of error, Cartwright specifically contends that his trial counsel was ineffective for failing to object to the admission of statements made by the victim's mother when she did not testify at trial. In his second assignment of error, Cartwright contends that his trial counsel was ineffective for "failing to object to testimony that [he] was familiar to law enforcement." (Appellant's Brief at 9).

*Standard of Review*

{¶19} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the

errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

{¶20} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶21} On appeal, Cartwright argues that his trial counsel was ineffective for failing to object to the admission of impermissible hearsay and improper character evidence. However, "[t]he 'failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *Liles* at ¶ 49, quoting *State v. Johnson*, 2006-Ohio-6404, ¶ 139. "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994), quoting Jacobs, *Ohio Evidence*, at iii-iv (1989). "To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was

-11-

materially prejudiced by counsel's ineffectiveness." *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988).

**{¶22}** Based on our review of the evidence to which Cartwright objects, we conclude that Cartwright failed to demonstrate that his trial counsel was ineffective. That is, Cartwright failed to demonstrate that his trial counsel's failure to object to the impermissible hearsay and improper character evidence amounted to a substantial violation of his duties to his client and that he was materially prejudiced by his trial counsel's failure to object.

**{¶23}** To begin with, Cartwright contends that his trial counsel should have objected to the admission of an audio recording of a 911 call, text messages, and statements made by the victim's mother when the declarant did not testify at trial. Cartwright contends that this evidence violated the Confrontation Clause as well as the Rules of Evidence. Thus, we will begin by addressing whether the admission of the 911 call, text messages, and statements made by the victim's mother was proper under the rules of evidence. Then, we will consider whether the admission of that evidence violated Cartwright's Sixth Amendment rights.

*Hearsay*

**{¶24}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Hearsay is inadmissible under Evid.R. 802, unless a particular statement fails to meet the two-part definition in

Evid.R. 801(C), or fully satisfies the conditions for nonhearsay prior statements under Evid.R. 801(D)(1) or (2), or falls within one of recognized exceptions under Evid.R. 803 or 804." *State v. Richcreek*, 2011-Ohio-4686, ¶ 22 (6th Dist.). "[A] statement is, by definition, not hearsay when it is offered for a purpose other than to prove the truth of the matter asserted." *State v. Armour*, 2022-Ohio-2717, ¶ 38 (3d Dist.).

**{¶25}** Based on our review of the 911 call, the text messages, and the statements made by the victim's mother, we conclude that such evidence was admissible as a present-sense impression or an excited utterance even though the victim's mother did not testify at trial. A present-sense impression is a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1). "With respect to present sense impressions, 'the declarant need not be under "stress of excitement caused by the event or condition," as required for an excited utterance; rather, the primary focus is whether the statement was contemporaneous with the perceived event or condition.'" *State v. Steward*, 2020-Ohio-4553, ¶ 46 (10th Dist.), quoting *State v. Crowley*, 2009-Ohio-6689, ¶ 14 (2d Dist.), quoting Evid.R. 803(2).

**{¶26}** An excited utterance is '[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *State v. Thompson-Shabazz*, 2017-Ohio-7434, ¶ 105 (2d

Dist.), quoting Evid.R. 803(2). The Supreme Court of Ohio has set forth the following test for determining whether a statement qualifies as an excited utterance under Evid.R. 803(2):

> (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,
>
> (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
>
> (c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and
>
> (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

*State v. Jones*, 2012-Ohio-5677, ¶ 166. "When evaluating statements under this test, '[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance.'" *State v. Little*, 2016-Ohio-8398, ¶ 11 (3d Dist.), quoting *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993). "Rather, 'each case must be decided on its own circumstances.'" *Id.*, quoting *State v. Duncan*, 53 Ohio St.2d 215, 219 (1978). "'The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought.'" *Id.*, quoting *Taylor* at 303.

-14-

**{¶27}** "[T]he hearsay exceptions for present sense impressions and excited utterances reflect "'an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event"'" because ""'the key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter.'"'" *Steward* at ¶ 47, quoting *State v. Travis*, 2006-Ohio-787, ¶ 35 (2d Dist.), quoting *State v. Ellington*, 2004-Ohio-5036, ¶ 10 (8th Dist.). When a statement is made at the time of the event (or shortly thereafter), the minimal lapse of time between the event and the utterance of the statement is an insufficient period to reflect on the perceived event—that is, the lack of reflection bolsters a statement's trustworthiness. *Id.*

**{¶28}** Based on our review of the record, we conclude that the 911 call, the text messages, and the statements made by the victim's mother were admissible as an excited utterance or a present-sense impression. Critically, it is clear to us that the 911 call, the text messages, and the statements made by the victim's mother do *not* lack trustworthiness since such were made during the altercation and while the declarant was under the excitement of the event. Importantly, that evidence reflects that the statements of the victim's mother—as captured in the audio recording of the 911 call, in the text messages, and through her statements to Cartwright during the altercation—were the product of *reactive* thought, not reflective thinking.

{¶29} Indeed, the record reflects that the victim's mother placed the 911 call during the time that the altercation was occurring between the victim and Cartwright. Specifically, shortly after perceiving the condition, the victim's mother described for the 911 operator what she overheard (while on speakerphone) as well as the content of the text messages sent to her by her daughter. Similarly, the text messages were exchanged during the altercation and describe the action that the victim's mother took in response to the text messages sent to her.

{¶30} At trial, the victim testified that, *during* the altercation with Cartwright, she "was on speaker phone [with her mother and she] was also texting with her and pleading for her to send the Police." (Aug. 22-24, 2023 Tr. at 194). The victim testified that she texted her mother "the address to the house and [requested her] to call the Police." (*Id.* at 195). State's Exhibits 1 and 2 depict those text messages. The exhibits indicate that the victim's mother sought clarification from the victim regarding whether to contact law enforcement. They further reflect that, upon receiving an affirmative response, the victim's mother proceeded to contact law enforcement.

{¶31} Finally, our review of the record reveals that the statements of the victim's mother were not the product of reflective thought. Rather, the statements of the victim's mother were introduced to illustrate how the victim was able to escape from Cartwright. To illustrate, the victim testified that her mother heard the argument with Cartwright on her speakerphone. According to the victim, her

mother "was begging and pleading" for Cartwright to release the victim to which Cartwright responded, "I'm not letting her go." (*Id.* at 196). She further testified that, when her mother informed Cartwright that "she was done and that she was calling the cops," Cartwright threw the victim's belongings at her and forced her out of the house. (*Id.*). To us, it is evident that the victim's mother was distressed when she implored Cartwright to release her daughter, particularly given the presence and use of a firearm. Her exasperated response, threatening to contact law enforcement, was a direct reaction to Cartwright's refusal.

{¶32} For these reasons, we conclude that the 911 call, the text messages, and the statements of the victim's mother were admissible under the Rules of Evidence as an excited utterance or present-sense impression. *See State v. Jackson*, 2005-Ohio-6143, ¶ 15 (2d Dist.).

*Confrontation Clause*

{¶33} Having determined that the evidence to which Cartwright objects was not inadmissible hearsay, we will turn to his argument that 911 call, the text messages, and the statements made by the victim's mother should have been excluded under the Confrontation Clause. The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004), quoting the Confrontation Clause.

> The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

*State v. Maxwell*, 2014-Ohio-1019, ¶ 34.

**{¶34}** Consequently, "[o]nly testimonial hearsay implicates the Confrontation Clause." *State v. McKelton*, 2016-Ohio-5735, ¶ 185. "Therefore, even if a statement falls under a hearsay exception it can be excluded as testimonial because such statements violate the Confrontation Clause." *State v. Hairston*, 2016-Ohio-8495, ¶ 27 (10th Dist.). Conversely, nontestimonial statements may be admissible under a hearsay exception. *Id.* Likewise, "[t]here is also no dispute that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *State v. Ricks*, 2013-Ohio-3712, ¶ 18, quoting *Crawford* at 59, and citing *Williams v. Illinois*, 567 U.S. 50, 57-58 (2012).

**{¶35}** "The key issue is what constitutes a testimonial statement: 'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *State v. Hood*, 2012-Ohio-6208, ¶ 33, quoting *Davis v. Washington*, 547 U.S. 816, 821 (2006). Even though the United States Supreme Court "did not define the word 'testimonial,'" courts have distinguished statements

made to law enforcement from statements communicated to non-law enforcement officials. *Maxwell* at ¶ 34, quoting *Crawford* at 52.

**{¶36}** We will start by addressing whether the admission of the 911 call violated Cartwright's Sixth Amendment rights. In reviewing the content of the 911 call, we conclude that such call was not testimonial. *Accord State v. Douglas*, 2019-Ohio-2067, ¶ 29 (3d Dist.), citing *State v. Smith*, 2017-Ohio-8558, ¶ 37 (1st Dist.) ("Because 911 calls seeking police assistance are not testimonial in nature, the Confrontation Clause does not apply."). Critically, the 911 call was placed to address an ongoing emergency and to seek assistance from law enforcement. *See id.*, citing *Heard* at ¶ 15 (concluding "that the 9-1-1 call was used to address an ongoing emergency, and as such, was not testimonial in nature"); *State v. Williams*, 2013-Ohio-726, ¶ 14 (6th Dist.) (concluding "that statements in the 911 call were nontestimonial" because "the primary purpose of the statements by the neighbor in the 911 call was [sic] to seek police assistance to aid [the victim] in an ongoing emergency involving domestic violence").

**{¶37}** Moreover, neither the text messages nor the statements made by the victim's mother violated Cartwright's Sixth Amendment rights. For the same reason that the 911 call did not violate Cartwright's Sixth Amendment rights, the text messages and the statements made by the victim's mother were not testimonial. Imperatively, based on our review of that evidence, there is no reason to believe that the statements made in the text messages or the statements made by the victim's

mother were made with any intention that they be used in future legal proceedings. Rather, the statements were made to address an ongoing emergency.

**{¶38}** Consequently, the admission of the 911 call, the text messages, and the statements made by the victim's mother did not violate Cartwright's Sixth Amendment rights.

*Character Evidence*

**{¶39}** Cartwright further contends in his second assignment of error that his trial counsel was ineffective for failing to object to the admission of Detective Neidemire's and Steven Stechschulte's ("Detective Stechschulte") testimonies. Specifically, Cartwright contends that his trial counsel should have objected to Detective Neidemire's and Stechschulte's testimonies that they were "familiar with him" because such was improper-character evidence.

**{¶40}** "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."''" *State v. Bagley*, 2014-Ohio-1787, ¶ 56 (3d Dist.), quoting *State v. May*, 2012-Ohio-5128, ¶ 69 (3d Dist.), quoting Evid.R. 404(B). "'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."''" *Id.* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is

non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 2012-Ohio-6091, ¶ 23 (7th Dist.). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22. The other acts evidence "is admissible when the evidence is probative of a separate, nonpropensity-based issue." *Id.*

**{¶41}** In this case, Cartwright contends that Detective Neidemire's testimony that he sought Detective Stechschulte's assistance in interviewing Cartwright because "he knows Mr. Cartwright" runs afoul of Evid.R. 404(B). (Aug. 22-24, 2023 Tr., Vol. II, at 348). Cartwright further takes issue with Detective Stechschulte's testimony that he is "familiar with a lot of people in Lima, [Cartwright] being one of them"; that he "interviewed [Cartwright] because [he] had a prior rapport with him"; and he has "talked to him a lot over the years." (Aug. 22-24, 2023 Tr., Vol. III, at 380, 384). In sum, Cartwright argues that "[t]he effect of the introduction of this evidence was an improper suggestion that law enforcement's familiarity with [him] was evidence of bad character." (Appellant's Brief at 10).

**{¶42}** Based on our review of Detective Neidemire's and Stechschulte's testimonies, we conclude that Evid.R. 404(B) was never implicated by their testimonies since their testimonies were not introduced to prove Cartwright's character. Importantly, neither Detective Neidemire nor Detective Stechschulte testified that Cartwright had a criminal record or how they knew Cartwright. Indeed, the State elicited this testimony from Detectives Neidemire and

Stechschulte to explain the investigative steps they took and the reasons behind them. Thus, the detectives' testimonies did not present any additional criminal acts or wrongful conduct by Cartwright.

{¶43} For these reasons, we conclude that Cartwright failed to demonstrate that his trial counsel was ineffective failing to object to the hearsay and character evidence. Consequently, Cartwright failed to demonstrate that his trial counsel's failure to object to that evidence amounted to a substantial violation of his duties to his client or that he was materially prejudiced by his trial counsel's failure to object.

{¶44} Therefore, Cartwright's first and second assignments of error are overruled.

## Fourth Assignment of Error

## The Trial Court's Sentence Is Contrary To Law

{¶45} In his fourth assignment of error, Cartwright argues that the sentence imposed for his felonious assault and kidnapping convictions is contrary to law. Specifically, Cartwright urges this court to diverge from our prior precedent in which we determined that a trial court must impose a mandatory sentence for an underlying offense when there is an accompanying firearm specification. We decline to diverge from our standing precedent.

### *Standard of Review*

{¶46} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not

support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶47}** On appeal, Cartwright challenges this court's interpretation of R.C. 2929.13(F)(8). Summarily, this court affirmed "that R.C. 2929.13(F)(8) obligates the trial court to impose a mandatory prison term for any felony (except carrying concealed weapons) where the offender had or controlled a firearm when committing that offense." *State v. Peters*, 2023-Ohio-4362, ¶ 85 (3d Dist.). In other words, "[t]he mandatory sentence required by R.C. 2929.13(F)(8) is for the underlying felony and not for any firearm specification that might be attached to the offense." *Id. Accord State v. Wolfe*, 2022-Ohio-96, ¶ 25 (3d Dist.).

**{¶48}** Consequently, applying the standing precedent of this court, we conclude that Cartwright's sentence is not contrary to law. That is, Cartwright was convicted of felonious assault with an accompanying firearm specification as well as kidnapping with an accompanying firearm specification. As this court previously resolved, Cartwright's conviction for the firearm specification establishes that he employed a firearm in the commission of felonious assault and kidnapping. *See Wolfe* at ¶ 25; *Peters* at ¶ 86. As a result, "the trial court applied R.C. 2929.13(F)(8)

consistent with our decision in *Wolfe*" and sentenced Cartwright to a mandatory prison term for his felonious-assault and kidnapping convictions. *Peters* at ¶ 86. Therefore, based on the authority of *Wolfe* and *Peters*, the trial court's imposition of mandatory prison terms for Cartwright's felonious assault and kidnapping convictions does not render his sentence contrary to law. *Accord Wolfe* at ¶ 25; *Peters* at ¶ 86.

{¶49} Cartwright's fourth assignment of error is overruled.

{¶50} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and EPLEY, J.J., concur.**

**/hls**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**