[Cite as *State v. Compton*, 2025-Ohio-5459.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

CHRISTOPHER L. COMPTON,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-17

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2024 0219

**Judgment Affirmed**

**Date of Decision: December 8, 2025**

APPEARANCES:

    *Chima R. Ekeh* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Christopher L. Compton ("Compton"), appeals the April 10, 2025 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a domestic incident during which Compton became angry with his wife for not answering her phone and initiated a physical assault inside their home. During the assault, Compton forced the victim to the ground to take her phone, struck her in the back, and then punched her in the face. Compton's actions resulted in a series of severe injuries—including broken ribs, a collapsed lung requiring a chest tube for four days, a broken nose, and a split lip— that required the victim to be in the hospital's intensive care unit for five days. During her hospitalization, the victim developed pneumonia, which necessitated her transfer to another hospital for additional treatment.

{¶3} On November 14, 2024, the Allen County Grand Jury indicted Compton on a single count of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony. On November 18, 2024, Compton filed a written plea of not guilty to the indictment.

{¶4} The case proceeded to a jury trial on March 4-5, 2025. On March 5, 2025, the jury found Compton guilty of felonious assault as alleged in the

indictment. On April 10, 2025, the trial court sentenced Compton to a minimum term of five years to a maximum term of seven and a half years in prison.

{¶5} Compton filed his notice of appeal on May 8, 2025. He raises one assignment of error for our review.

## Assignment of Error

**Appellant's Conviction For Felonious Assault Was Against The Manifest Weight Of The Evidence (Tr. pg. 415)**

{¶6} In his sole assignment of error, Compton argues that his felonious assault conviction is against the manifest weight of the evidence. In particular, Compton contends that the jury lost its way by believing the inconsistent and incredible testimony of the victim.

*Standard of Review*

{¶7} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier

of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶8} Compton was convicted of felonious assault in violation of R.C. 2903.11, which provides, in its relevant part, that "[n]o person shall knowingly . . . [c]ause serious physical harm to another . . . ." R.C. 2903.11(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶9} "'Serious physical harm to persons' means," as relevant to this case, "[a]ny physical harm that carries a substantial risk of death"; "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity"; "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement"; or "[a]ny physical harm that involves acute pain of such duration as to result in

substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(b)-(e).

{¶10} On appeal, Compton contends that his felonious assault conviction is against the manifest weight of the evidence because the victim's testimony was not believable. Specifically, Compton claims that her testimony was not credible and inconsistent because (1) she gave contradictory statements to law enforcement as to how her injuries occurred; (2) she lied to medical personnel and law enforcement about her intoxication; (3) she provided inconsistent accounts of how Compton allegedly struck her; and (4) her physical injuries were more consistent with her initial story of an accidental fall while intoxicated than with the assault that she described at trial.

{¶11} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.), citing *DeHass*, 10 Ohio St.2d at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶12} Notwithstanding the inconsistencies in the victim's testimony that Compton directs us to, the jury was able to judge those inconsistencies against the

balance of the victim's testimony and the remainder of the State's evidence. Indeed, despite the victim's testimony, the jury also observed Compton's testimony, "and we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 2015-Ohio-222, ¶ 33 (3d Dist.), quoting *State v. Phillips*, 2014-Ohio-5162, ¶ 125 (10th Dist.).

{¶13} Critically, the jury in this case was faced with conflicting narratives and, as the trier of fact, it was "'patently in the best position to gauge the truth.'" *State v. Chavez*, 2020-Ohio-426, ¶ 46 (3d Dist.), quoting *State v. Smith*, 2015-Ohio-1610, ¶ 24 (5th Dist.). Specifically, the jury was able to assess the victim's testimony explaining her own conduct. In particular, the jury heard the victim's testimony that she initially lied to law enforcement, claiming that she tripped and fell, because Compton had told her to do so and she was afraid of him. However, once Compton was arrested and she was safely separated from him, the victim's detailed account of the assault remained consistent through her interviews with law enforcement, medical staff, and her testimony at trial. The jury was also able to review the victim's testimony against the photographs and medical records depicting the severity of the injuries that she sustained. Likewise, Compton's trial counsel explored the credibility issue at trial and thoroughly cross-examined the victim regarding her initial statements to police and her level of intoxication. *Accord State v. Cartwright*, 2024-Ohio-5638, ¶ 15 (3d Dist.).

{¶14} Moreover, the jury was able to compare Compton's version of events—that the victim's significant injuries resulted from an accidental fall—with the State's evidence presented at trial. While Compton emphasizes that the victim's intoxication, and evidence showed that her blood alcohol concentration upon arrival at the hospital was .16, the law enforcement officers who responded to the scene testified that she did not appear impaired. In particular Patrolman Nevan Stolly of the Lima Police Department, who is trained in identifying impairment, noted what he perceived as possible signs of intoxication but confirmed that he was able to speak with her coherently about the incident. More definitively, Patrolman Dylan Thiessen, also of the Lima Police Department, testified that he did not believe that the victim was intoxicated, detected no odor of alcohol, and saw none of the classic signs of impairment that would have prompted him to conduct a field sobriety test.

{¶15} Furthermore, the jury was able to weigh the credibility of Compton's narrative against his own contradictory statements, where he claimed both to have been on the couch inside when he heard a thud and to have been outside when she fell. Importantly, it was well within the province of the trier-of-fact to determine the credibility of Compton's and the victim's testimony, including the prerogative to find Compton's version of events not to be truthful. *See Chavez*, 2020-Ohio-426, at ¶ 46 (3d Dist.). Thus, this inconsistency supported the jury's conclusion that the victim's extensive injuries were not the result of a simple fall, but of the violent assault that she described at trial.

**{¶16}** Ultimately, although there were inconsistencies, the jury weighed them and found the victim's version of events more credible than Compton's version. *See id*. at ¶ 47. Therefore, after weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the jury's credibility determination, we conclude that the jury did not clearly lose its way and create a manifest miscarriage of justice. *Accord id.* Consequently, we are not persuaded that Compton's felonious-assault conviction must be reversed and a new trial ordered.

**{¶17}** Compton's assignment of error is overruled.

**{¶18}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WALDICK, P.J. and MILLER, J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

William R. Zimmerman, Judge

Juergen A. Waldick, Judge

Mark C. Miller, Judge

DATED:
/hls